

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-13-1996

# Salazar-Haro v. INS

Precedential or Non-Precedential:

Docket 96-3007

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Salazar-Haro v. INS" (1996). *1996 Decisions*. Paper 74.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/74

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 96-3007
_____


PEDRO ALEJANDRO SALAZAR-HARO,
                              Petitioner
                V.

IMMIGRATION & NATURALIZATION SERVICE,
                              Respondent

_____

PETITION FOR REVIEW OF AN ORDER OF THE IMMIGRATION
AND NATURALIZATION SERVICE
DATED DECEMBER 19, 1995
(BIA No. A38-267-921)
_____

Submitted Pursuant To Third Circuit LAR 34.1(a)
August 6, 1996

Before:  MANSMANN, SCIRICA, and WEIS, Circuit Judges

(Filed September 13, 1996)
_____


Richard J. Sharkey, Esquire
515 Linden Street, 3rd Floor
Allentown, PA  18101

Attorney for Petitioner

Frank W. Hunger, Esquire
 Assistant Attorney General, Civil Division
William J. Howard, Esquire
 Senior Litigation Counsel
Ernesto H. Molina, Jr., Esquire
Office of Immigration Litigation, Civil Division
Department of Justice
P.O. Box 878
Washington, D.C.  20044

Attorneys for Respondent


_____


OPINION OF THE COURT

_____

WEIS, Circuit Judge.

After this petition for review of a deportation order was filed with us, Congress enacted a statute providing that such matters would not be subject to review by any court. In the absence of language setting an effective date for the statute, we conclude that it became law on the day of enactment and withdrew our jurisdiction. Accordingly, we will dismiss the petition.

Petitioner, a native and citizen of Peru, entered the United States in 1978 and became a permanent resident in 1983. In June 1993, he was convicted on charges of conspiracy to distribute cocaine and of aiding and abetting and was sentenced to forty-two months imprisonment. His wife Amada Morales, the mother of his three sons, was a co-defendant. She pleaded guilty and was deported to Nicaragua in 1994.

Petitioner was released from prison after thirty-seven months, and thereafter, was ordered to show cause why he should not be deported. After a hearing, the Immigration Judge found that petitioner had been rehabilitated, was truly remorseful, had obtained a high school equivalency diploma, was caring for his three minor sons, who were United States citizens, and was gainfully employed. The Immigration Judge further found that petitioner had cooperated with the government in connection with his drug activities.

Weighing against these equities, however, the Immigration Judge noted that petitioner had started selling drugs in 1987. After a year absence from the country, beginning in the middle of 1988, petitioner returned to the United States and resumed drug trafficking. After the death of the individual for whom he had sold drugs originally, petitioner made new contacts and began a business of his own. By his own testimony, he sold over ten kilograms of cocaine. "[W]hile this Court has heavily weighed the consequences of this decision on three U.S. citizen children," the Immigration Judge concluded that "the well being of the community of the United States would not best be served by allowing [petitioner] to remain in the United States."

After reviewing the merits of the case, the Board of Immigration Appeals denied Salazar-Haro's appeal.

The petition for review was filed in this court on January 17, 1996. At that time, 8 U.S.C. § 1105a(a) provided for judicial review of all final orders of deportation. On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (1996). Title IV, section 440(a) of the Act, codified at 8 U.S.C. § 1105a(a)(10), states: "Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in section 1251(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1251(a)(2)(A)(ii) of this title for which both predicate offenses are covered by section 1251(a)(2)(A)(i) of this title, shall not be subject to review by any court."

In view of this statutory provision, the INS contends that we should dismiss the appeal for lack of jurisdiction. Petitioner points out that the Act does not specify the effective date of the pertinent section, and that generally, statutes are not applied retroactively. He also notes that precluding judicial review of administrative actions can give rise to constitutional concerns.

There can be little doubt that Congress has the power to deprive a Court of Appeals of jurisdiction previously granted over certain categories of cases. Ex parte McCardle, 74 U.S. 506 (1868). The issue before us is whether such action may retroactively affect cases commenced before the repealer, including those at various stages in the appellate process.

In McCardle, a statute permitting appeals in habeas corpus matters from the Circuit Courts to the Supreme Court was repealed after the case had been argued before the Supreme Court, but before entry of judgment. The Court held that "no judgment could be rendered in a suit after the repeal of the act under which it was brought and prosecuted." Id. at 514. "Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Id.

In more recent times, the Supreme Court has wrestled with the complex problem of statutory retroactivity, particularly when, as here, the legislation is silent as to both its effective date and congressional intention. In Landgraf v. USI Film Products, 511 U.S. 244, 114 S.Ct. 1483 (1994), the Court discussed the presumption against retroactive legislation, noting: "Since the early days of this Court, we have declined to give retroactive effect to statutes burdening private rights unless Congress had made clear its intent." 114 S.Ct. at 1499. On the other hand, "[w]e have regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed." Id. at 1501. The Landgraf Court cited with approval Bruner v. United States, 343 U.S. 112, 116-17 (1952), which stated: "This rule -- that, when a law conferring jurisdiction is repealed without any reservation as to pending cases, all cases fall with the law -- has been adhered to consistently by this Court." See also The Assessors v. Osbornes, 76 U.S. 567 (1869).

Therefore, unlike situations where retroactivity would affect pre-existing rights, withdrawal of jurisdiction, although realistically disrupting settled expectations, does not preserve pending litigation. Of course, by expressing its intention, Congress could provide that a court continue to process cases not yet adjudicated. Alternatively, Congress could direct the court to exercise its discretion, as is true with respect to procedural rules, which are applicable to pending cases "insofar as just and practicable." No such language, however, appears in Title IV of the Antiterrorism Act.

We have carefully reviewed Title IV to determine whether Congress provided expressly, or by implication, that the effective date of the section under consideration here would be

other than the day of enactment.  We have found no such indication, and thus, agree with similar conclusions by the Courts of Appeals for the Second, Fifth, and Ninth Circuits.  SeeHincapie-Nieto v. INS, ___ F.3d ____, 1996 WL 431750 (2d Cir. August 2, 1996); Duldulao v. INS, 90 F.3d 396 (9th Cir. 1996); Mendez-Rosas v. INS, 87 F.3d 672 (5th Cir. 1996).  We hold, therefore, that the amendment to 8 U.S.C. § 1105a(a)(10) became effective on the day of enactment, April 24, 1996.

In addition to the three decisions by the Courts of Appeals cited above, we have carefully read the opinion of the United States Court of Appeals for the Seventh Circuit in Reyes-Hernandez v. INS, 89 F.3d 490 (7th Cir. 1996).  There, the Court reasoned that it was unlikely Congress intended to withdraw jurisdiction where an applicant for discretionary relief had at least a colorable defense to deportability but conceded that fact in the administrative process in order to take his chances on appeal to the court.  Although this approach is appealing, we do not find it persuasive.  We hold, therefore, that the amendment to 8 U.S.C. § 1105a(a)(10) is applicable to this case and withdraws our jurisdiction to review the petition on the merits.

We think it appropriate to note that our ruling is a narrow one and is confined to the circumstances in this case where the petitioner seeks review of a final order of deportation.  Like the Hincapie-Nieto Court, we do not foreclose judicial review of all claims by aliens arising in the course of deportation proceedings.

The Supreme Court has repeatedly acknowledged that "the power to expel or exclude aliens [i]s a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control."  Fiallo v. Bell, 430 U.S. 787, 792 (1977) (citations omitted).  Consequently, Congress is free to make rules that would be unacceptable if applied to citizens.  Id.  Nevertheless, "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  Reno v. Flores, 507 U.S. 292, 306 (1993) (citing The Japanese Immigrant Case, 189 U.S. 86, 100-01 (1903)).

To the extent, therefore, that constitutional rights applicable to aliens may be at stake, judicial review may not be withdrawn by statute.  See Felker v. Turpin, ____ U.S. ____, 116 S.Ct. 2333 (1996) (statutory limitation on Supreme Court's certiorari jurisdiction does not infringe on the Court's constitutional power to grant habeas corpus.).  See alsoMcCardle, 74 U.S. at 512-14; Hincapie-Nieto, 1996 WL 431750 at *3-4 (noting possible habeas corpus remedies available to aliens under detention subject to final orders of deportation).

Because we do not have jurisdiction, the petition for review will be dismissed.