Fernando Jorge DE SOUSA, Petitioner,

v.

Janet RENO, Attorney General, et al., Respondents.

Civil Action No. 98–1470.

United States District Court, E.D. Pennsylvania.

Dec. 9, 1998.

---

Martin A. Kascavage, Philadelphia, PA, for Plaintiff.

Stephen J. Britt, Philadelphia, PA, for Defendant.

## *MEMORANDUM*

BRODY, District Judge.

Before me is petitioner Fernando Jorge DeSousa's request for habeas corpus relief, filed pursuant to 28 U.S.C. § 2241. The petition presents the question whether Respondents violated DeSousa's constitutional rights by refusing to consider his application for discretionary relief from a deportation order.

On July 6, 1998, United States Magistrate Judge Peter B. Scuderi filed a Report and Recommendation concluding that DeSousa was entitled to habeas corpus relief and recommending that the case be remanded to respondents to consider and rule on the merits of DeSousa's application. The Attorney General filed objections ("Objections") to the Report and Recommendation on July 22, 1998. After *de novo* review of those portions of the Report and Recommendation objected to by the Attorney General, I conclude that I have jurisdiction to entertain this petition,

and that respondents' refusal to consider De-Sousa's application violated his right to equal protection under the law. I accept Magistrate Judge Scuderi's conclusion and agree with his reasoning on two of the issues presented in this case, but depart from his reasoning and conclusion on the third.

## I. BACKGROUND

As the procedural and factual history underlying this petition is not in dispute, I adopt the following description taken almost verbatim from the Report and Recommendation.

DeSousa, a native and citizen of Portugal, has been a lawful permanent resident of the United States since December 28, 1969. According to the petition, DeSousa was convicted of the following crimes: (1) in 1978, he was convicted of "burglary and theft by unlawful taking or dispositioning criminal conspiracy" for which he was sentenced to three years probation; (2) in 1985, he was convicted of "driving under the influence" for which he was fined and his license was suspended; (3) in 1989, he was convicted of "aggravated assault and possession of an instrument of crime" and sentenced to eight years probation; and (4) in 1992, he was convicted of "aggravated assault and recklessly endangering another person" and sentenced to four and a half to nine months imprisonment. As an alien convicted of two crimes of moral turpitude and also as an aggravated felon, DeSousa became subject to deportation pursuant to section [1] 241(a)(2)(A)(ii), 8 U.S.C. § 1251(a)(2)(A)(ii) (two crimes of moral turpitude) and section 241(a)(2)(A)(iii), 8 U.S.C. § 1251(a)(2)(A)(iii) (aggravated felony) of the Immigration and Nationality Act, 8 U.S.C. §§ 1101–1685 ("INA").[2] At the time DeSousa was convicted of the crimes that rendered him deportable, INA § 212(c) provided that:

Aliens lawfully admitted for permanent residence who temporarily proceed abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile, may be admitted in the discretion of the Attorney General.

Although section 212(c) applied on its face only to "excludable" aliens (those who are trying to get into the country), and not to "deportable" aliens (those who are trying to stay in the country), the Third Circuit had extended section 212(c) to apply to deportable aliens as well. *Katsis v. INS*, 997 F.2d 1067, 1070 (3d Cir.1993) (citing *Francis v. INS*, 532 F.2d 268, 272–73 (2d Cir.1976) (holding that distinction between lawfully admitted aliens who temporarily left the country and those who never left violated equal protection because it was "wholly unrelated to any legitimate governmental interest")); *see also Morel v. INS*, 90 F.3d 833, 837 & n. 3 (3d Cir.1996) (vacated on other grounds, 144 F.3d 248 (1998)).

Subsequent to DeSousa's date of conviction, but prior to the commencement of deportation proceedings, Congress enacted two statutes, the Anti–Terrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (enacted April 24, 1996), and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009 (enacted September 30, 1996), both of which enacted amendments to the INA which are relevant to this case. Section 440(d) of the AEDPA greatly expanded the category of criminal convictions that would render an alien ineligible to apply for section 212(c) relief. In particular, AEDPA § 440(d) amended INA § 212(c) to render aliens, like DeSousa, convicted of an aggravated felony under INA § 241(a)(2)(A)(iii) (now codified at 8 U.S.C. §§ 1227(a)(2)(A)(iii)) ineligible for

---

1. These sections are now renumbered as INA § 237(a)(2)(A)(ii) and 237(a)(2)(A)(iii) IIRIRA § 305(a)(2) and codified at 8 U.S.C. § 1227(A)(2)(A)(iii) and 1227(a)(2)(A)(iii).

2. INA § 241(A)(2)(A)(ii)-, now renumbered as INA § 237(a)(2)(A)(ii) and codified at 8 U.S.C. § 1227(a)(2)(A)(ii) provides that "Any alien who at any time after entry is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct ... is deportable." INA § 241(a)(2)(A)(iii) now renumber as INA § 237(a)(2)(A)(iii) and codified at 8 U.S.C. § 1227(a)(2)(A)(iii) provides, in relevant part: "Any alien who is convicted of an aggravated felony at any time after admission is deportable."

§ 212(c) relief.[3] Judicial review of deportation orders was overhauled in IIRIRA. Section 306(a) of IIRIRA added a new section 242(g) to the INA providing that:

Exclusive Jurisdiction. Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

IIRIRA § 306(c)(1) provides that the new INA § 242(g) applies "without limitation to claims arising from all past, pending or future exclusion, deportation or removal proceedings...." In addition to section 306(a), IIRIRA § 309(c)(4) contained "transition rules" for deportation proceedings pending on April 1, 1997, providing in part that "there shall be no appeal of any discretionary decision under section 212(c) ... of the [INA] (as in effect as of the date of the enactment of this Act)." IIRIRA § 309(c)(4)(E).

On October 28, 1996, the INS issued an order to show cause why DeSousa should not be deported. DeSousa was personally served with the Order on March 13, 1997. A deportation hearing was held on May 27, 1997, at which DeSousa contested his deportability. In July 1997 DeSousa applied for a discretionary waiver of deportation under INA § 212(c). On August 4, 1997, an Immigration Judge ("IJ") ordered DeSousa deported to Portugal after finding that he was not statutorily eligible to file for section 212(c) relief pursuant to AEDPA § 440(d) and refusing to reach the merits of his application. On February 25, 1998, the Board of Immigration Appeals ("BIA") affirmed the IJ's order of deportation and held that DeSousa was not statutorily eligible for section 212(c) relief. The BIA based its ruling on a determination made by the Attorney General on February 21, 1997, that AEDPA § 440(d) applied to applications for relief pending on the date of the AEDPA's enactment. *In re*

*Soriano,* 16 Immig.Case Rep. B1–239, 240.1 (Op.Atty.Gen. Feb. 21, 1997) ("*Soriano II* "). On May 14, 1997, the BIA determined in an unrelated case that, although section 440(d) eliminated section 212(c) relief for certain deportable aliens situated like DeSousa, the plain language of the amendment left section 212(c) relief available to excludible aliens. *See In re Fuentes–Campos,* Interim Dec. No. 3318, at 4 (BIA May 14, 1997).

On March 20, 1998, DeSousa filed the instant petition for writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania seeking review of his final order of deportation. DeSousa contends that section 440(d) does not apply with respect to crimes committed before the date of the AEDPA's enactment; and even if section 440(d) applies retroactively, application of section 440(d) pursuant to *In re Fuentes–Campos* violates the Equal Protection Clause. Accordingly, DeSousa seeks an order directing the BIA to consider and rule on the merits of his application for INA § 212(c) relief.

## II. *DISCUSSION*

This case presents the following issues: (1) whether this court has jurisdiction under 28 U.S.C. § 2241 despite amendments to the INA, set forth in AEDPA and IIRIRA, limiting judicial review of deportation orders; (2) whether AEDPA § 440(d) applies to foreclose section 212(c) relief to aliens convicted prior to the date of the AEDPA's enactment; and (3) whether the BIA's application of section 440(d) "irrationally" distinguishes between "deportable" and "excludable" aliens in violation of the Equal Protection Clause of the Fourteenth Amendment, as incorporated into the Fifth Amendment.

In his Report and Recommendation, Judge Scuderi concluded that: (1) this Court properly exercised jurisdiction over this petition; (2) AEDPA § 440(d) was not intended to apply retroactively to conduct pre-dating

---

**3.** AEDPA § 440(d) (as amended by IIRIRA § 306(d)) amended INA § 212(c) to read:
This subsection shall not apply to an alien who is deportable by reason of having committed any criminal offense covered in [INA]

§ 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are, without regard to the date of their commission, otherwise covered by section 241(a)(2)(A)(ii).

AEDPA; and (3) the BIA's application of section 440(d) to DeSousa violated his right to equal protection of the laws. The Attorney General objected to the Report and Recommendation's conclusions regarding jurisdiction and retroactivity.

## A. Jurisdiction

■ The Attorney General concedes that AEDPA and IIRIRA cannot deprive the federal courts of jurisdiction under 28 U.S.C. § 2241 to collaterally review final orders of deportation against criminal aliens. She contends, however, that Congress intended such jurisdiction to be in the courts of appeals and to be limited to cases involving Constitutional claims.[4] It is well settled that parties cannot confer subject-matter jurisdiction either by agreement or by waiver. *See, e.g., Brown v. Francis,* 75 F.3d 860, 866 (3d Cir.1996); *United Indus. Workers v. Government of Virgin Islands,* 987 F.2d 162, 168 (3d Cir. 1993) (collecting cases). Accordingly, I must independently determine whether Congress intended for jurisdiction over this petition for writ of habeas corpus to be vested in the district court.

There is no question that, unless it has been expressly repealed, 28 U.S.C. § 2241 provides a jurisdictional basis for reviewing immigration decisions upon petition for writ of habeas corpus. I find no express congressional intent in the language in IIRIRA § 306 or IIRIRA § 309(c),[5] or in any other provision of the AEDPA or IIRIRA, to prevent an alien from seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241 or to assert claims of the nature being asserted

here. Indeed, none of the provisions explicitly repeal or amend section 2241. Had Congress wished to eliminate district court jurisdiction under section 2241, it would have done so affirmatively and clearly. *See Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996); *Ex parte Yerger,* 75 U.S. (8 Wall.) 85, 105, 19 L.Ed. 332 (1868) ("Repeals by implication are not favored. They are seldom admitted except on the ground of repugnancy...."). This conclusion is reinforced by the fact that both the IIRIRA and AEDPA make specific reference when they amend or repeal statutes granting jurisdiction to the federal courts. *See id.* For example, AEDPA § 440(a), specifically referred to former INA § 106, the judicial review provision, providing that "Section 106 of the Immigration and Nationality Act (8 U.S.C. § 1105a(a)(10)) is amended."

Further undermining any argument for implied repeal of section 2241 in immigration cases is the fact that AEDPA § 401(e), entitled "Elimination of Custody Review by Habeas Corpus" specifically amended "[s]ection 106(a) of the Immigration and Nationality Act" and was silent as to 28 U.S.C. § 2241.[6] Similarly, while the IIRIRA contains numerous provisions restricting or altering various avenues for judicial review, none of these provisions mention section 2241. Accordingly, I conclude that the ambiguous, venue, and uncertain language contained in the statutes does not eliminate the recognized jurisdiction of the district courts under 28 U.S.C. § 2241 to hear habeas corpus claims. *See, e.g., Goncalves v. Reno,* 144 F.3d 110 (1st Cir.1998) (holding that district courts retain jurisdic-

---

4. "[Petitioner]'s Constitutional claim, i.e., the equal protection argument, should be raised in the first instance in the court of appeals.... [T]he circuit can entertain a habeas petition in the first instance." Objections, at 2–3 (citing 28 U.S.C. § 2241).

5. There is disagreement among the federal courts addressing this issue as to whether IIRIRA's "permanent rules" found in section 306(a), or the "transitional rules" found in section 309(c) apply to deportation proceedings pending on April 1, 1997, the general effective date of IIRIRA's provisions. Compare *Henderson v. INS,* 157 F.3d 106, 117 (2d Cir.1998) (transitional rule contained in IIRIRA § 309(c)(4) applies) with *Goncalves v. Reno,* 144 F.3d 110, 118 (1st Cir. 1998) (permanent new rule of INA § 242(g), con-

tained in IIRIRA § 306(a), applies). My conclusion is not dependent on a determination of which rules apply, because neither provision expressly eliminates jurisdiction under 28 U.S.C. § 2241.

6. Section 106(a)(10) had provided:

any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings.

Because this section was only an alternate, supplemental grant of federal court jurisdiction, repeal of this section did not eliminate the basic grant of habeas jurisdiction contained in 28 U.S.C. § 2241. *See, e.g. Sabino v. Reno,* 8 F.Supp.2d 622, 635 (S.D.Tex.1998).

tion under section 2241 over habeas corpus petitions challenging deportation orders); *Jean–Baptiste v. Reno,* 144 F.3d 212 (2d Cir.1998) (same); *Magana–Pizano v. INS,* 152 F.3d 1213 (9th Cir.1998) (same). *But see Abbate v. Reno,* 1998 WL 195653 (E.D.Pa.) (concluding that the broad language of IIRI-RA § 306(a)(2) is a "clear statement of Congress's intent to abrogate the district court's traditional power to grant writs of habeas corpus to aliens").[7]

Some district courts that have found section 2241 jurisdiction have limited it to situations in which deportation would result in "a fundamental miscarriage of justice," or where petitioner identifies "a grave constitutional error." *See Sandoval v. Reno,* 1997 WL 839465 (E.D.Pa.) (citing cases). These courts have imposed such limitations in an effort to accommodate Congress's apparent intent to severely curtail judicial review in certain deportation cases while mitigating the constitutional problems that would result from the complete deprivation of habeas relief. *See Yesil v. Reno,* 958 F.Supp. 828, 839 (S.D.N.Y.1997). I am persuaded, however, by the reasoning employed by the court in *Mojica v. Reno,* 970 F.Supp. 130, 163 (E.D.N.Y.1997), wherein the court held that "accommodation of general policy goals based merely on 'suggestions' of congressional intent are ... not appropriate in this context. Fidelity to *Felker* and *Yerger* and the requirements of the clear statement rule militates against reading such limitations into the scope of section 2241." I conclude that DeSousa properly brought his claim in the district court under its section 2241 habeas corpus jurisdiction.

## B. Retroactivity of AEDPA § 440(d)

Attorney General Reno next objects to the Magistrate Judge's conclusion on the retroactive application of AEDPA § 440(d).[8] The

Magistrate Judge concluded that section 440(d), which eliminated INA § 212(c) discretionary relief from deportation for criminal aliens, is inapplicable when the convictions forming the basis for deportation occurred prior to AEDPA's enactment.

On February 25, 1998, the BIA dismissed DeSousa's application for section 212(c) relief based on the Attorney General's decision in *Soriano II,* which held that AEDPA § 440(d) barred consideration of applications for discretionary relief that were pending on the date of AEDPA's enactment. Although the convictions forming the basis for DeSousa's deportation proceedings occurred prior to April 24, 1996, the date of AEDPA's enactment, his deportation proceedings did not commence until October 1996 and his application for section 212(c) was not filed until July 1997, both well after AEDPA's enactment. Thus, DeSousa's application for relief was not "pending" on the date of enactment and the decision in *Soriano II* did not directly address his situation. However, the Attorney General's ruling that section 440(d) bars consideration of pending applications necessarily implies that section 440(d) applies to conduct predating its enactment. In his petition, DeSousa challenges the Attorney General's interpretation of section 440(d), and argues that it cannot be applied to bar consideration of his application for discretionary relief from deportation.

### 1. General Principles

*Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), speaks to when a federal court must defer to a federal agency's interpretation of a statute.

When a court reviews and agency's construction of the statute which it administers, it is confronted with two questions.

---

**7.** The Third Circuit decision in *Massieu v. Reno,* 91 F.3d 416, 421 (3d Cir.1996) is not determinative of this issue. That case held that INA § 106(a), a provision dealing with a separate and distinct form of direct judicial review, vested the courts of appeals with sole, exclusive jurisdiction. Recently, the Third Circuit in *Morel v. INS,* 144 F.3d 248, 251 n. 4 (1998), in dictum, distinguished judicial review provided in the courts of appeals from habeas corpus review stating:

"AEDPA § 440(a) amends INA § 106(a), 8 U.S.C. § 1105a(a), which formerly designated the Courts of Appeals as the exclusive fora for 'judicial review of all final orders of deportation' *except to the extent that limited additional judicial review was available via habeas corpus proceedings.* See INS § 106(a)(10)," (emphasis added).

**8.** For the text of section 440(d) see *supra,* note 3.

First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter.... If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply imposes its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

467 U.S. at 842–43, 104 S.Ct. 2778. Thus, under *Chevron*, a court must first examine the statute to determine whether Congress has spoken clearly on the question at issue. If the statute is clear, that ends the inquiry. If the statute is silent or ambiguous, the question becomes, not how to interpret the statute as if faced with a clean slate, but whether the federal agency's decision is based on a permissible construction of the statute. If the agency's construction is permissible, a court must defer to the agency's reading of the statute.

When, as is the case here, the agency's interpretation arguably attaches new consequences (the refusal to consider an application for discretionary relief) to past conduct (criminal convictions pre-dating AEDPA), the determination as to whether that interpretation is "permissible" requires a side-analysis under the Supreme Court's retroactivity jurisprudence, particularly *Landgraf v. USI Film Products, Inc.,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). *Landgraf* sets out how a court must examine a statutory provision when the statute might be applied to conduct that took place prior to its enactment.

When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Scheidemann v. INS,* 83 F.3d 1517, 1521 (3d Cir.1996) (citing *Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483). Thus, *Landgraf* provides that, after examining the statute using normal rules of statutory construction to determine whether Congress has spoken clearly on the question at issue. *Lindh v. Murphy,* 521 U.S. 320, ——, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997); *Mathews v. Kidder, Peabody & Co., Inc.,* 161 F.3d 156, 160 (3rd Cir.). If the court finds the statute silent or ambiguous with regard to the reach of the statute, the court must determine whether the statute would have "retroactive effect"— i.e. "whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483. If the court finds that the statute does have "retroactive effect" then "there is a traditional, strong presumption against retrospective application". *Mathews,* 161 F.3d at 159, and the statute is to be applied prospectively only. If the statute does not have "retroactive effect," there are "many situations" where "[e]ven absent specific legislative authorization, application of new statues passed after the events in suit is unquestionably proper." *Landgraf,* 511 U.S. at 273, 114 S.Ct. 1483, and, generally, the court should "use normal rules of statutory construction along with traditional methods of determining a statute's temporal reach to establish whether a statute is to be applied retrospectively." *Mathews,* at 159; *see also Scheidemann,* 83 F.3d at 1522. However, in a case such as this, where the agency charged with administering the statute has already construed the statute, if the court finds that the statute does not have "retroactive effect," the court does not start from

scratch to determine whether the statute applies to pending proceedings. Under *Chevron*, the court must defer to the agency's permissible construction of the statute.

■ Thus, in deciding whether AEDPA § 440(d) bars discretionary relief under INA § 212 to criminal aliens whose convictions predated AEDPA's enactment, using the guidelines from *Chevron* and *Landgraf*, the analysis proceeds as follows:

- Decide whether Congress has clearly expressed its intent on this precise issue. I conclude that it has not and that the statute is ambiguous on this point.

- Look to the Attorney General's interpretation, that AEDPA § 440(d) bars discretionary relief to aliens whose applications for relief were pending on the date of enactment (and hence applies to prior convictions), and decide whether that interpretation is permissible.

- Because the interpretation arguably attaches new consequences to prior convictions, section 440(d) must be examined under *Landgraf* to determine whether it has "retroactive effect." I find that, under the law of the Third Circuit, section 440(d) does not have "retroactive effect," and thus the Attorney General's interpretation is permissible.

Because I find the Attorney General's interpretation is permissible, under *Chevron* that interpretation prevails, and I find that section 440(d) bars INA § 212(c) relief to criminal aliens whose convictions pre-date enactment of section 440(d).

2. Congressional Intent Regarding the Application of AEDPA § 440(d).

There are four different ways that AEDPA § 440(d) could be applied with regard to past convictions. (1) Section 440(d) could apply prospectively only, meaning that it is only applicable to aliens whose convictions were entered after April 24, 1996, the effective date of AEDPA. *See, e.g., Sandoval v. Reno,* 1997 WL 839465 (E.D.Pa.1997). This is the construction urged by DeSousa, whose application for INA § 212(c) relief post-dates sec-

tion 440(d) but whose conduct pre-dates enactment. (2) Section 440(d) could be applied partially to prior convictions in two different ways. One such an interpretation would require consideration of any application for INA § 212(c) relief which was pending on April 24, 1996; however any section 212(c) application filed after that date, even if based on convictions entered prior to enactment, would be barred from consideration. *See In re Soriano,* Interim Dec. No. 3289, 1996 WL 426888 (BIA June 27, 1996) (*"Soriano I"*), *vacated by Soriano II; Cruz Walters v. Reno,* 16 F.Supp.2d 166 (D.P.R.1998). (3) Alternatively, section 440(d) could require consideration of any application for § 212(c) relief, so long as the alien's underlying deportation proceedings (as distinct from an application for relief), were pending on the date of enactment. (4) Finally, section 440(d) could completely bar all discretionary relief as of April 24, 1996. *See Avelar Cruz v. Reno,* 6 F.Supp.2d 744 (N.D.Ill.1998). The Attorney General has adopted the fourth position, and has determined that section 440(d) bars consideration of applications for relief pending on the date of enactment. *See Soriano II.*

Clearly, Congress did not explicitly state in AEDPA when section 440(d) would take effect or the cases to which it would apply. Congressional intent, however, may be either explicit or implicit. *See Lindh v. Murphy,* 521 U.S. 320, ——, 117 S.Ct. 2059, 2063, 117 S.Ct. 2059 (1997) (finding congressional intent by negative implication). Therefore, I must examine Title IV of AEDPA, using traditional rules of statutory construction, *id., Mathews,* at 160, to determine whether Congress has clearly conveyed, by implication, its intentions as to section 440(d)'s temporal reach.

In my search for indications of congressional intent regarding the reach of section 440(d). I look to the opinion in *Salazar–Haro v. INS,* 95 F.3d 309 (3d Cir.1996). In that case, the court had to determine whether AEDPA § 440(a) applied to cases pending on the date of AEDPA's enactment.[9] In

9. Again, I note that unlike the facts in *Salazar–Haro,* neither DeSousa's deportation proceedings

nor his application for relief from deportation were pending on the date of AEDPA's enactment.

language mirroring section 440(d)'s elimination of discretionary relief, section 440(a) eliminated the courts of appeals' jurisdiction to review final deportation orders for specified criminal aliens. Compare AEDPA § 440(a):

> (10) Any final order of deportation against an alien who *is deportable by reason of having committed any criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(i)* shall not be subject to judicial review.

with AEDPA § 440(d), which eliminated INA § 212(c) discretionary relief for any alien who:

> *is deportable by reason of having committed any criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(i).*

(emphasis added). Neither provision contains an express statement as to whether or not it was intended to apply to pending proceedings. Although the opinion in *Salazar-Haro* does not disclose in detail the Court's analysis of Title IV, the court did state: "We have carefully reviewed Title IV to determine whether Congress provided expressly, *or by implication*, that the effective date of [section 440(a)] would be other than the day of enactment." 95 F.3d at 311 (emphasis added). The court found no such implication, and held that section 440(a) stripped the courts of appeals' jurisdiction over pending cases, a result which, by necessity, meant that section 440(a) applied to criminal convictions predating AEDPA. For the reasons set forth fully below, I find no clear basis in the statute to conclude that section 440(d) was intended to apply differently than section 440(a)—i.e., that 440(d) was intended to apply prospectively only.

A different result was reached by the First Circuit in *Goncalves v. Reno,* 144 F.3d 110 (1st Cir.1998).[10] In *Goncalves,* the petitioner was an alien deportable for having been convicted of two or more crimes of moral turpitude. Unlike DeSousa, the petitioner in *Goncalves* was in deportation proceedings, and had filed his application for discretionary relief from deportation under INA § 212(c), before Congress enacted AEDPA § 440(d).[11] The question faced by the court in *Goncalves* was whether section 440(d) precluded consideration of section 212(c) applications pending on the date of enactment.[12] In concluding that section 440(d) did not preclude consideration of pending applications, the *Goncalves* court drew upon the Supreme Court's opinion in *Lindh* and found that Congress had, by negative implication, clearly expressed its intent that AEDPA § 440(d) was intended to apply prospectively only.[13] I do not agree that such a clear intent can be found in the statute.

In *Lindh,* the court faced the question of whether certain provisions in Title I of AEDPA would apply to cases pending on the date of AEDPA's enactment. Sections 101 to 106 of Title I amended Chapter 153 of title 28,

**10.** Obviously, unlike this court, the First Circuit is not controlled by the Third Circuit's teachings on this issue, provided in *Salazar-Haro* and *Scheidemann.*

**11.** In this case, neither DeSousa's deportation proceedings, nor his application for § 212(c) relief, was pending on April 24, 1996, the date of AEDPA's enactment. His deportation proceedings did not commence until October 1996, when the INS issued an order to show cause why he should not be deported.

**12.** The court in *Goncalves* did not reach the issue presented here, whether section 440(d) barred consideration of applications for relief filed after AEDPA's enactment, where the convictions forming the basis for deportation occurred prior to enactment. *See also Henderson v. INS,* 157 F.3d 106, 128 n. 28 (2d Cir.1998) (following *Goncalves* in finding that § 440(d) was not intended to apply to cases pending on the date of enactment, and therefore not reaching "[Petitioner's] broader argument that the statute should not apply to primary conduct—i.e., criminal convictions—that occurred prior to April 24, 1996").

**13.** Magistrate Judge Scuderi appears to have adopted the reasoning and conclusion of the *Goncalves* court, and further noted that his conclusion—that § 440(d) was intended to apply prospectively only—was also in accord with that of then Chief Judge Cahn's opinion in *Sandoval v. Reno,* 1997 WL 839465 (E.D.Pa.). I am not persuaded by *Sandoval* that such an intent can be found in the statute.

which governs habeas corpus generally. These sections contain no provisions specifying whether they are to apply to pending cases. Section 107 added a new chapter to title 28, Chapter 154, entitled "Special Habeas Corpus Proceedings in Capital Cases." Significantly, section 107 contained an explicit statement that the new Chapter 154 "shall apply to cases pending on or after the date of enactment of this Act." § 107(d), 110 Stat. at 1226. The Supreme Court in *Lindh* found that Congress, by explicitly providing that section 107 applies to pending cases, had negatively expressed its intent that the amendments contained in sections 101 to 106 were to be applied prospectively only.

Applying *Lindh* to AEDPA § 440(d), the First Circuit in *Goncalves* found a similar negative implication that section 440(d) was intended to apply prospectively only. The court pointed to two provisions in Title IV which expressly provide for retroactive application. First, the court looked to section 413, which strips alien terrorists of several forms of relief from deportation, and contains an "effective date" section which provides: "The amendments made by this section ... shall apply to applications filed before, on, or after such date if final action has not been taken on them before such date." 144 F.3d at 129 (citing AEDPA § 413(g)). The court also pointed to AEDPA § 421, which restricted the Attorney General's discretion to grant asylum to alien terrorists. That section also contained a provision specifying that it was intended to be applied retroactively. *Id.* at 131.[14] The court concluded that, by specifying retroactive application of those provisions, Congress had clearly expressed its intent that section 440(d) was to apply prospectively only.

However, sections 413(g) and 421(b) are not the only sections in Title IV to contain "effective date" provisions. Title IV contains numerous such provisions, and these provisions are not uniform. Three other "effective date" provisions provide examples. First, AEDPA § 435, entitled "Expansion of Criteria for Deportation for Crimes of Moral Turpitude" is expressly made applicable to "aliens against whom deportation proceedings are initiated after the date of the enactment of this Act." AEDPA § 435(b). Second, AEDPA § 441, which limits collateral attacks on underlying deportation orders by criminal aliens, expressly provides that it is intended to apply "to criminal proceedings initiated after the date of enactment of this Act." AEDPA § 441(b). Because both of these sections concern criminal aliens, and contain provisions specifying that they apply prospectively only, the absence of such a provision with regard to section 440(d) could reasonably be construed to signal that section 440(d) applies to pending proceedings, and hence to prior convictions. As a final example, I look to AEDPA § 440(f) which, of all Title IV's provisions containing an effective date, is the provision in closest proximity to section 440(d). Section 440(f) reads:

EFFECTIVE DATE.—The amendments made by subsection (e) shall apply to convictions entered on or after the date of the enactment of this Act, except that the amendment made by subsection (e)(3) shall take effect as if included in the enactment of section 222 of the Immigration and Nationality Technical Corrections Act of 1994.

110 Stat. at 1278.[15] The most reasonable negative implication to draw from section 440(f) is that the amendments contained in section 440, other than section 440(e), apply to criminal convictions entered before enactment. An examination of these three provisions, in addition to the two provisions cited in *Goncalves*, prevents me from accepting the reasoning in that case.

My reading of section 440(f) is supported by the Supreme Court's direction that a court should "give effect to every provision of a statute," *Landgraf,* 511 U.S. at 259, 114 S.Ct. 1483, and should be "hesitant to adopt an interpretation of a congressional enact-

---

14. AEDPA § 421(b) provides: "The amendment made by subsection (a) shall take effect on the date of the enactment of this Act and apply to asylum determinations made on or after such date."

15. Section 440(e) altered the definition of "aggravated felony" in the statute defining criminal aliens, and section 440(e)(3) specifically dealt with alien smuggling.

ment which renders superfluous another portion of that same law." *Mackey v. Lanier Collection Agency & Service*, 486 U.S. 825, 837, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). If Congress had already clearly expressed, by negative implication, that section 440(d) was intended to apply prospectively, that same implication would attach to other sections of the statute which did not explicitly provide for retroactive application. Under such a reading of the statute, the first half of section 440(f)—which provides that "[t]he amendments made by subsection (e) shall apply to convictions entered on or after the date of the enactment of this Act, except that"—becomes redundant and superfluous. Congress could have achieved the same result by merely providing: "The amendment made by subsection (e)(3) shall take effect as if included in the enactment of section 222 of the Immigration and Nationality Technical Corrections Act of 1994." The only way to read section 440(f), as actually drafted, to give it full effect is to conclude that Congress intended to treat past criminal convictions differently in sections 440(d) and 440(e)—i.e., section 440(d) applies to prior convictions, while section 440(e) does not.

In *Goncalves*, the First Circuit also noted that in September 1996, when it enacted IIRIRA, Congress made technical amendments to AEDPA § 440(d). Three months prior to those amendments, the BIA ruled, in *Soriano I*, that section 440(d) applied to all pending deportation proceedings, unless an application for section 212 relief was already pending on the date of section 440(d)'s enactment. The *Goncalves* court noted that in amending section 440(d) in the fall of 1996, after the *Soriano I* decision. Congress did not specifically overrule the BIA and provide expressly that the restrictions in section 440(d) applied to pending applications for relief. The court found this to be a " 'significant' clue[ ] to congressional intent." *Goncalves*, (citing *INS v. Cardoza–Fonseca*, 480 U.S. 421, 430, 107 S.Ct. 1207, 94 L.Ed.2d 434

(1987)), in reaching its determination that section 440(d) did not apply to pending applications for relief.

I do not find this history persuasive to support DeSousa's contention that section 440(d) was not intended to apply to pre-AEDPA convictions. In *Soriano I*, the BIA clearly stated that section 440(d) applied to pending deportation proceedings (and, necessarily, to prior convictions), so long as no application for relief was pending on the date of enactment. Following the same logic employed by the court in *Goncalves*, if it had been Congress's clear intent that section 440(d) did not apply to prior convictions, Congress would have specifically overruled the BIA's decision on this point when it amended AEDPA § 440(d) in September 1996.

After employing standard tools of statutory construction as instructed by *Landgraf*, *Lindh*, and *Mathews*, and guided by the opinion in *Salazar–Haro*, I conclude that AEDPA is ambiguous on the reach of section 440(d). Congress has not clearly indicated whether the elimination of discretionary relief should be applied prospectively or retrospectively.

### 3. Does AEDPA § 440(d) have "Retroactive Effect"?

In *Scheidemann v. INS*, 83 F.3d 1517 (3d Cir.1996), the Third Circuit squarely addressed the issue of whether the withdrawal of discretionary relief from deportation under INA § 212(c) has "retroactive effect" under *Landgraf*. *Scheidemann* dealt with amendments to the INA enacted in 1990, one of which eliminated INA § 212(c) relief for aliens convicted of aggravated felonies.[16] The court specifically held that the amendments did not have "retroactive effect" under *Landgraf* and that "[t]herefore, the presumption against retroactivity is irrelevant." *Id.* at 1523.[17]

---

**16.** Immigration Act of 1990, Pub.L., No. 101–649, § 511(a), 104 Stat. 4978, 5052 (1990).

**17.** The Third Circuit recently noted that, in *Scheidemann*, the court "used a textual analysis to discern congressional intent to apply [the elimination of discretionary relief] retrospective-

ly." *Mathews*, at 168 n. 23. This footnote in *Mathews* however, did not undercut the *Scheidemann* court's *"independent reason*[ ] why the BIV's interpretation of the statute [to apply the elimination of discretionary relief to pending applications] does not violate the presumption against retroactivity.... that the statute *does not*

In holding that the elimination of discretionary relief under section 212(c) does not have "retroactive effect," the *Scheidemann* court zeroed in on the three classes of cases, noted in *Landgraf,* where statutes which arguably affect the consequences of past conduct are not deemed to have "retroactive effect" and are customarily applied to pending cases. These are cases where new statutes: (1) authorize or affect the propriety of prospective relief; (2) confer or oust jurisdiction; or (3) change procedural rules, which regulate secondary, rather than primary conduct. *Id.,* at 1522–23 (citing *Landgraf,* 511 U.S. at 274–75, 114 S.Ct. 1483). The Court compared the withdrawal of section 212(c)'s purely discretionary relief to all three of those categories of cases, and soundly rejected the petitioner's argument that eliminating such relief has "retroactive effect." Thus *Scheidemann* is in direct opposition to the conclusion reached by Magistrate Judge Scuderi that elimination of discretionary relief under section 212(c) "is plainly substantive, and so implicates *Landgraf's* presumption against retroactivity." Report and Recommendation, at 15. Following *Scheidemann,*[18] I hold that the elimination of discretionary

relief under section 212(c) does not have "retroactive effect" under *Landgraf.* Therefore, the presumption against retroactivity does not attach, and no clear statement from Congress is required to apply AEDPA § 440(d) to applications for discretionary relief pending on the date of enactment.

### 4. Deference to The Attorney General's Construction of AEDPA § 440(d).

Finding that, under *Scheidemann,* AEDPA § 440(d) does not have "retroactive effect." I further conclude that the Attorney General's decision in *Soriano II,*[19] that section 440(d) applies to preclude discretionary relief to aliens whose petitions for such relief were pending on the date of enactment, is a permissible construction of the statute and is entitled to deference under *Chevron.* Thus, in the absence of DeSousa's meritorious equal protection claim, he would be barred from applying for discretionary relief from deportation.

### C. Equal Protection

Even though I have ruled in the Attorney General's favor on the issue of statutory in-

---

have retroactive effect." *Scheidemann,* 83 F.3d at 1521 (emphasis added).

**18.** Although the *Scheidemann* decision pre-dated another recent Supreme Court decision on retroactivity, *Hughes Aircraft Co. v. U.S. ex rel. Schumer,* 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997) (issued one week prior to the opinion in *Lindh* ), consideration of that case does not alter my view on the continuing vitality of *Scheidemann.* In *Hughes* the Supreme Court held that a new statutory provision, which expanded the scope of qui tam actions under the False Claims Act, had retroactive effect because it "permitt[ed] actions by an expanded universe of plaintiffs with different incentives" and thereby "essentially creat[ed] a new cause of action" against the defendant, 520 U.S. at ——, 117 S.Ct. at 1878. The *Hughes* court was also troubled by the fact that the amendments at issue stripped defendants of a complete affirmative defense to private suits—that they had disclosed information voluntarily to the government—a consequence which " 'attach[ed] a new disability in respect to transactions or considerations already past.' " *Id.* 117 S.Ct. at 1877 (quoting *Landgraf,* 511 U.S. at 269, 114 S.Ct. 1483). The effects of the statute at issue in this case differ substantively from the effects of the amendments in *Hughes.* See *Laguerre v. Reno,* 1998 WL 100238, n. 9 (N.D.Ill.).

Unlike the statute at issue in *Hughes,* the elimination of section 212(c) relief at issue here does not in any way create a new cause of action against DeSousa, it merely restricts one form of prospective, purely discretionary relief more akin to changes in the standards for granting injunctive relief, which have traditionally been applied to pending cases. See *Landgraf,* 511 U.S. at 273–74, 114 S.Ct. 1483. Also, in *Hughes* the qui tam defendant could make a plausible argument that it had relied upon the affirmative defense of self-disclosure, and voluntarily disclosed information to the government. In contrast, the court in *Scheidemann* clearly rejected the reliance argument regarding the elimination of § 212(c) relief stating: "Given the facts that petitioner's pre–1987 conduct clearly subjected him to deportation as well as criminal sanctions, and that § 212(c), as it then existed, offered relief from the former only at the unfettered discretion of the Attorney General, petitioner does not, and could not, contend that his conduct was undertaken in reliance on the then current version of § 212(c)." *Scheidemann,* 83 F.3d at 1523.

**19.** I note that, as I have relied upon *Scheidemann* in reaching my conclusion in this case, in *Soriano II,* the Attorney General relied upon *Scheidemann,* in part, in her determination that AEDPA § 440(d) could permissibly be applied to pending applications for discretionary relief.

terpretation, I will grant this petition on the basis of DeSousa's Equal Protection claim. DeSousa alleges that AEDPA § 440(d) violates his right to Equal Protection of the Laws guaranteed by the Fourteenth Amendment, as incorporated into the Fifth Amendment, because it makes aliens in deportation proceedings ineligible for section 212(c) relief while preserving such relief for aliens in exclusion proceedings.

Section 212(c) relief is termed a "Waiver of Inadmissibility." This provision permits the Attorney General to "waive" certain violations that would otherwise be grounds for deportation. Such waivers are granted on a purely discretionary basis. From the plain language of section 212, which is captioned "Excludable aliens," it may appear that section 212(c) applies only to aliens who seek entry into the United States. Indeed, section 212(a) lists various grounds under which aliens are barred from entering the country—in other words, grounds for "exclusion." Section 212(c) then grants to the Attorney General the discretionary authority to waive the grounds of exclusion listed in section 212(a). Despite these references to exclusion, "it is well settled that § 212(c) relief also applies to deportation of a lawfully admitted alien with an unrelinquished domicile of seven consecutive years." *Gonzalez v. INS*, 996 F.2d 804, 806 (6th Cir.1993); *see also Francis v. INS*, 532 F.2d 268 (2d Cir. 1976). Thus, DeSousa's status as an alien subject to deportation does not disqualify him for section 212(c) relief under the widespread interpretation of that provision. However, in *Matter of Fuentes–Campos*, Interim Dec. No. 3318, 1997 WL 269368 (BIA), the BIA interpreted AEDPA § 440(d), as applicable only to aliens in deportation proceedings, not to aliens in exclusion proceedings. The BIA thereby reversed its previous holding in *Matter of Silva*, 16 I. & N. Dec. 26, 30 (BIA 1976) that such relief was available in deportation proceedings. In the instant case, the BIA held, on February 25, 1998, that the DeSousa was statutorily ineligible for section 212(c) relief pursuant to section 440(d).

■ It has long been held that the constitutional promise of equal protection of the laws applies to aliens as well as citizens. *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. This is not a command that all persons be treated alike, but, rather, a direction that all persons similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). The level of scrutiny applied to ensure that classifications comply with this guarantee differs depending on the nature of the classification. Classifications involving a suspect or quasi-suspect class or impacting certain fundamental constitutional rights, are subject to heightened scrutiny. *Id.* Other classifications, however, need only be rationally related to a legitimate government goal.

■ The challenged classification made by the BIA here, that aliens outside the United States and seeking admission (i.e., excludible aliens) are eligible for section 212(c) relief while aliens inside the United States and seeking to remain here (i.e., deportable aliens) are not, is not a suspect or quasi-suspect classification. *Francis v. INS*, 532 F.2d 268, 272 (2d Cir.1976) (applying rational basis test to invalidate BIA's interpretation of statute providing section 212(c) discretionary review for permanent resident alien who temporarily proceeds abroad voluntarily and not under deportation order, but not to nondeparting aliens). The classification in this case, therefore, is subject to the general rule that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate governmental interest. *Id.* ("[D]istinctions between different classes of persons must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.").

In enacting section 212(c). Congress attempted to provide some degree of flexibility to permit worthy returning aliens to continue their relationship with family members in the

United States despite a ground for exclusion. *See Francis*, 532 F.2d at 272. These considerations apply with equal force to nondeparting aliens. *Id.; see e.g. Vargas v. Reno*, 966 F.Supp. 1537, 1545 (S.D.Cal.1997) (criticizing the *Fuentes–Campos* decision as absurd and ironic); *Jurado–Gutierrez v. Greene*, 977 F.Supp. 1089, 1094–5 (D.Colo.1997) (remedying the constitutional violation by directing the BIA to consider and rule on the DeSousa's application for INA § 212(c) relief, "without regard to the effect of AEDPA and IIRIRA").[20] Accordingly, the classification in the instant case is irrational and arbitrary and not in furtherance of a legitimate governmental interest.[21]

## III. CONCLUSION

Because respondents have violated petitioner's right to equal protection of the laws, by refusing to consider his application under former section 212(c) for discretionary relief from deportation, while affording aliens in exclusion proceedings such discretionary relief, this case is remanded to respondents to consider and rule on the merits of DeSousa's application for discretionary relief. An appropriate order will follow.

## ORDER

AND NOW, this 9th Day of December, 1998, upon review of the petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 and the Report and Recommendation of United States Magistrate Judge Peter B. Scuderi, **IT IS ORDERED** that:

1. The Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 is **GRANTED.**

2. The deportation order is **STAYED** pending final resolution of this matter and this case is **REMANDED** to Respondents to reopen Petitioner's case, and consider and rule on the merits of Petitioner's application for INA § 212(c) relief.

20. The Third Circuit has noted and other courts have held that section 212(c) discretionary relief could not constitutionally be confined to aliens who have left the country and that the provision has been uniformly extended to apply to deportation proceedings as well. *Green v. INS*, 46 F.3d 313, 315 (3d Cir.1995) (noting, in dictum, that discretionary relief could not constitutionally be confined to aliens who have left the country); *Katsis v. INS*, 997 F.2d 1067, 1070 (3d Cir.1993) (noting, in dictum, that under case law, discretionary relief may be extended to deportable aliens who have not exited the United States); *Tapia–Acuna v. INS*, 640 F.2d 223, 224–25 (9th

Cir.1981); *Francis v. INS*, 532 F.2d 268, 271–73 (2d Cir.1976).

21. As a practical matter, it appears that a violation of Equal Protection occurs only for applications that were still pending as of April 1, 1997, thereby excluding the effect of the IIRIRA, and decided by the BIA after the May 14, 1997 *Fuentes–Campos* decision. DeSousa falls within this category. By granting Mr. Fuentes–Campos' application for a section 212(c) discretionary hearing on May 14, 1997, the BIA violated petitioner's equal protection rights when it denied his application.