**Barronie GRANT Plaintiff,**

v.

**Charles W. ZEMSKI, Acting District Director, U.S. Department of Justice, Immigration and Naturalization Service Defendant.**

**No. CIV. A. 99–2620.**

United States District Court,
E.D. Pennsylvania.

June 22, 1999.

Lawrence H. Rudnick, Philadelphia, PA, for Plaintiff.

Linda L. Shafer, U.S. Attorney's Office, Philadelphia, PA, for Defendant.

## *MEMORANDUM*

REED, District Judge.

Before the Court is the petition of Barronie Grant ("Grant" or "Petitioner") for habeas corpus pursuant to 28 U.S.C. § 2241 (Document No. 1) which alleges that Grant is being unlawfully detained by

the Immigration and Naturalization Service ("INS" or "Respondent"). Grant is a lawful permanent resident who was taken into custody by the INS on or about May 4, 1999, based on a conviction over six years ago for which he received probation and a fine. Grant is being mandatorily detained pursuant to section 236(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(c), pending removal proceedings. For the reasons set forth below, the petition will be granted.[1]

## I. Background

Grant is a 37 year old native of Jamaica. He was admitted to the United States almost 19 years ago, in July of 1980 and adjusted his status to a lawful permanent resident on August 8, 1982. He has since remained a resident of the United States. Grant owns a home in Philadelphia, is gainfully employed and has two children who are United States citizens. Both his father and step-mother are United States citizens.

On November 20, 1992, Grant was convicted of one count of possession with the intent to distribute a controlled substance (marijuana). As a result of his conviction, Grant was sentenced to eighteen months reporting probation and a fine. Grant successfully completed his probation.

On May 4, 1999, INS agents took Grant into custody in Philadelphia. The INS determined that pursuant to § 236(c) Grant was subject to mandatory detention and was not eligible for release on bond. On May 12, 1999, the INS initiated removal proceedings against Grant by filing a Notice to Appear. On May 19, 1999, an Immigration Judge held an individual bond redetermination hearing. The Immigration Judge determined that § 236(c) did not apply to Grant and that he should be released from custody provided he post a $1,500.00 bond. In so ordering, the Immi-

gration Judge found that Grant was not a flight risk or a risk of danger to the person or property of others. (Respondent's Opposition to Petition For Writ of Habeas Corpus ("Resp.Opp."), Exh. 5 & 6).

The INS immediately appealed the decision of the Immigration Judge, triggering an automatic stay of his decision. *See* 8 C.F.R. § 3.19(i)(2). The net effect of the appeal by the INS was that Grant remained in custody at the Berks County prison pending a decision by the Board of Immigration Appeals ("BIA") on whether Grant is eligible for release. An appeal can take anywhere from three to six months. Meanwhile, the INS has yet to determine whether Grant will be deported.

## II. Discussion

Grant filed this petition for habeas corpus arguing that he is being unlawfully detained by a statute that does not apply to him or, in the alternative, is violative of the substantive and due process provisions of the Fifth Amendment of the United States Constitution. The respondent counters by arguing that the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") stripped this Court of jurisdiction to hear a petition for habeas corpus. The respondent also argues that even if this Court has jurisdiction, it should require Grant to exhaust administrative remedies. Finally, the respondent argues that, if the Court reaches the statutory question before it, § 236(c) applies to Grant and is not violative of the Constitution.

### A. Subject Matter Jurisdiction

■ Respondents argue that section 236(e) of the INA, 8 U.S.C. § 1226(e), has stripped this Court of jurisdiction to review this petition for habeas corpus. As amended by the IIRIRA, § 236(e) of the INA states:

of a hearing held on June 14, 1999. This memorandum expands on the Court's reasoning as issued from the bench and summarized in an Order issued following the hearing.

---

1. Given the emergent nature of Grant's petition for habeas relief, an Order granting the petition for habeas corpus (Document No. 8) was issued from the bench at the conclusion

The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e). Respondent argues that this section forecloses judicial review over all immigration detention decisions made by the Attorney General concerning the application of § 236 and any of the Attorney General's decisions relating to a particular alien's suitability for INS detention or release under the statute. Respondent further argues that because Grant is subject to § 236(c) by virtue of his 1992 conviction, § 236(e) applies and the petition must be dismissed for lack of jurisdiction. This Court does not agree.

The Court of Appeals for the Third Circuit recently held that, despite the broad jurisdiction-stripping language of an analogous provision of the INA,[2] habeas corpus review pursuant to 28 U.S.C. § 2241 survived for claims by aliens who have been ordered deported based upon the commission of certain enumerated crimes. *Sandoval v. Reno,* 166 F.3d 225, 236–38 (3d Cir.1999); *see also De Sousa v. Reno,* 30 F.Supp.2d 844, 848–49 (E.D.Pa. 1998) ("unless it has been expressly repealed, 28 U.S.C. § 2241 provides a jurisdictional basis for reviewing immigration decisions upon petition for writ of habeas corpus"). The *Sandoval* Court recognized that habeas jurisdiction has been available to aliens in executive custody for over a century. *Id.* at 237. The Court of Appeals reasoned that in light of existing precedent, habeas jurisdiction could not be repealed by implication and that "nothing less than an express statement of congressional intent is required before a grant of habeas corpus

jurisdiction as provided in 28 U.S.C. § 2241 will be found to have been repealed." *Id.* (relying upon *Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) and *Ex Parte Yerger,* 8 Wall. 85, 75 U.S. 85, 19 L.Ed. 332 (1868)). Because § 242(g), did not contain an express and unequivocal revocation of habeas jurisdiction, the Court of Appeals held that the district court retained habeas jurisdiction. The *Sandoval* Court also reasoned that such a reading of the statute was necessary to avoid "serious constitutional problems." *Id.*

The reasoning set forth in *Sandoval* applies with equal force to § 236(e) and, specifically whether § 236(e) stripped this Court of jurisdiction to review a challenge to Grant's mandatory detention under § 236(c). 166 F.3d at 231–38; *Velasquez v. Reno,* 37 F.Supp.2d 663, 668 (D.N.J. 1999); *but see Edwards v. Blackman,* 1999 WL 350122, * 3–4 (M.D.Pa. May 27, 1999). As with § 242(g), § 236(e) does not contain a clear and express statement that habeas jurisdiction has been modified in any way. Indeed, the jurisdiction stripping language contained in § 242(g) is arguably broader than the language contained in § 236(e). *Compare* 8 U.S.C. § 1252(g) ("not withstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim ...") *with* 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section ..."). In addition, as the *Velasquez* Court recognized, § 236(e) was enacted after *Felker* was decided and, therefore, Congress was presumably aware that if it wished to repeal habeas jurisdiction, it

---

**2.** The Court of Appeals considered whether Section 242(g) of the INA, 8 U.S.C. § 1252(g), stripped the district court of habeas jurisdiction. Section 242(g) states:

Except as provided in this section and not withstanding any other provision of law, no

court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Chapter.

must do so explicitly. 37 F.Supp.2d at 668–69.

Finally, I note that this reading of § 236(e) comports with the Court's obligation to avoid reading serious constitutional problems into a statute, such as would confront the Court if § 236(e) were read to repeal habeas jurisdiction. *Sandoval,* 166 F.3d at 237; *Velasquez,* 37 F.Supp.2d at 669. The Suspension Clause of the United States Constitution states: "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. CONST. art. 1, § 9, cl. 2. Legislation divesting the district courts of habeas jurisdiction has withstood Constitutional scrutiny if a collateral remedy has been substituted which is "'neither inadequate nor ineffective to test the legality of a person's detention.'" *Sandoval,* 166 F.3d at 237 (quoting *Swain v. Pressley,* 430 U.S. 372, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977)). Here, however, under respondent's interpretation of § 236(e), the statute purportedly removes all review of executive detention under § 236 and as the Court of Appeals for the

Third Circuit recognized, "[a] statute removing all review of executive detention . . . [does] not provide an adequate and effective collateral remedy." *Id.*[3]

In sum, I find that § 236(e) does not contain a clear statement that Congress sought to eliminate habeas jurisdiction under 28 U.S.C. § 2241. I therefore hold that § 236(e) has not removed or modified this Court's jurisdiction to hear Grant's habeas petition pursuant to 28 U.S.C. § 2241.[4]

**B. Exhaustion of Administrative Remedies**

■ Where Congress specifically mandates, exhaustion is required. *McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992); *Massieu v. Reno,* 91 F.3d 416, 419–20 (3d Cir.1996). However, absent a statutory requirement, this Court has discretion whether to require exhaustion. *McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). The respondent concedes that the statute does not require exhaustion.[5]

---

**3.** Accordingly, my analysis differs completely with the analysis of the district court in *Edwards*. *See* 1999 WL 350122, *3–4. Inexplicably, in *Edwards*, court does not address applicable precedent from the Court of Appeals for the Third Circuit. *See* 1999 WL 350122, *3–4. Rather, in a cursory fashion, the court held that § 236(e) divests district courts of habeas corpus jurisdiction under 28 U.S.C. § 2241. The court reasoned that current law should govern unless there is an impermissible retroactive or retrospective effect. The court further reasoned, however, that there is no retroactivity concern when the newly enacted statute is jurisdictional in nature.

The error in the analysis by the court in *Edwards* is that the court assumed that habeas jurisdiction was included in the general jurisdiction stripping language of § 236(e). The issue in not whether § 236(e) is being applied retroactively but whether, as a threshold matter, it acts to repeal habeas jurisdiction at all. *See Sandoval,* 166 F.3d at 236–37. Furthermore, in *Edwards* the court never addresses the serious constitutional implications of its holding that jurisdiction under 28 U.S.C. § 2241 has been repealed by Congress.

*See* U.S. CONST. art. I, § 9, cl. 2 (Suspension Clause); *Sandoval,* 166 F.3d at 237–38. Thus, I respectfully disagree with the analysis of the district court in *Edwards*.

**4.** Having found that this Court has jurisdiction pursuant to 28 U.S.C. § 2241 to review Grant's petition for habeas corpus, I need not reach Grant's alternative argument that judicial review is permissible here because § 236(e) only forecloses judicial review of "discretionary" decisions of the Attorney General and is not applicable where the INA provides for mandatory detention.

**5.** An alien must generally exhaust all administrative remedies before seeking review of a final order of deportation. *See* 8 U.S.C. § 1252(d); *see also Massieu* 91 F.3d at 421, 426 (discussing exhaustion pursuant to 8 U.S.C. § 1105a(c)). In this case, however, Grant is not seeking review of a removal order, instead he seeks review of the decision of the INS to keep him in custody while he awaits a determination as to whether he will be "removed" from the United States. This distinction is significant, because there is no federal statute that imposes an exhaustion

As a general rule, parties should exhaust prescribed administrative remedies before seeking relief from the federal courts. *Id.* at 144–45, 112 S.Ct. 1081. Exhaustion serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency. However, "[n]otwithstanding these substantial institutional interests, federal courts are vested with a 'virtually unflagging obligation' to exercise the jurisdiction given to them." *Id.* at 146, 112 S.Ct. 1081 (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817–818, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). "In determining whether exhaustion is required, federal courts must balance the interests of the individual retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *Id.*

Here, the individual interests outweigh the countervailing institutional interests favoring exhaustion. *Id.* First, the precise issue before the Court—whether 236(c) applies retroactively to petitioner who was released from custody prior to the enactment of the IIRIRA amendments to the INA—does not implicate agency expertise. *Sandoval,* 166 F.3d at 239–40 (issue concerning statute's effective date is pure question of statutory construction for courts to decide and does not implicate agency expertise). Second, requiring Grant to remain in detention while the government appeals the decision of the Immigration Judge to grant bail will cause undue prejudice. *See id.* at 146–47 ("a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim"). Third, exhaustion is not required where, as here, administrative remedies may be inadequate because the administrative body has predetermined the issue before it. *See id.; In re Garvin–Noble,* Int. Dec. 3301, 1997 WL 61453 (BIA 1997) (interpreting statu-

requirement on aliens taken into custody pending their removal. *See Montero v. Cobb,*

tory language as applying retroactively to transition period); *see also, Alwaday v. Beebe,* 43 F.Supp.2d 1130, 1131 (D.Or. 1999) (exhaustion not required where petitioner is being mandatorily detained under § 236(c)); *Pastor–Camarena v. Smith,* 977 F.Supp. 1415, 1417 (W.D.Wa.1997) (exhaustion futile in light of *In re Garvin–Noble*). Thus, I hold that exhaustion of administrative remedies is not required.

C.  Applicability of § 236(c) of the INA to Grant

Section 236(c) states: "The Attorney General shall take into custody any alien who . . . is deportable by reason of having committed [a deportable offense] . . . when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." 8 U.S.C. § 1226(c). The detention is mandatory except in limited circumstances not relevant here (witness protection program). *See* 8 U.S.C. § 1226(c)(2) (alien must also establish that he or she will not pose a danger to the community and is not a flight risk).

Grant argues that the mandatory detention provision of § 236(c) should not be retroactively applied to him because he was released from criminal custody years before the IIRIRA amendments were enacted and, therefore, long before the effective date of § 236(c). Respondent argues that Congress intended for the mandatory detention provision to apply regardless of when an alien was convicted or when her or she was released from criminal custody and, therefore, it is irrelevant that Grant was released from criminal custody prior to the enactment of § 236(c).

Determining the temporal reach of a statute involves a two-step inquiry. *Sandoval,* 166 F.3d at 240 (citing *Landgraf*

937 F.Supp. 88, 91 (D.Mass.1996).

*v. USI Film Prod.*, 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)). First, using ordinary tools of statutory construction, the Court must determine whether Congress prescribed the temporal reach of the statute. If there is no such "express command," the Court must determine whether the application of the statute would have a "retroactive effect." *Id.* (quoting *Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483).

The United States District Court for the District of New Jersey recently considered whether § 236(c) applied retroactively to an alien who had been released from custody prior to the enactment of the IIRIRA amendments. In *Velasquez,* the court held that § 236(c) did not retroactively apply to an alien who had been release from criminal custody prior to the enactment of IIRIRA. 37 F.Supp.2d at 672–73. The *Velasquez* Court found that Congress expressly provided that § 236(c) is to be applied only prospectively to aliens who were released from criminal custody after the statute took effect. The court reasoned that Congress explicitly set out the effective date of the IIRIRA. Specifically, Congress had included a provision that implementation of the mandatory detention provision contained in § 236(c) could be delayed for a period of 1–2 years and that the "provisions of § 236(c) shall apply to individuals released *after* such periods." Pub.L. 104–208, Div. C, Title III, § 303(b)(2) (emphasis added).[6] During the 1–2 year delay, separate transitional rules were in place which provided the Attorney General with discretion in detaining criminal aliens. *Id.* § 303. Thus, the court reasoned that the mandatory rule of § 236(c) went into effect

after the transitional rules expired on October 9, 1998. Although the court acknowledged that § 236(c) includes aliens that would never technically be released, such as aliens who have "engaged in" (but not be convicted of) terrorist activities, it reasoned that such an inconsistency could not overcome the explicit language of the statute which states that an alien is to be taken into custody "when released" as well as the explicit language of the transitional rules which state that § 236(c) "shall apply to individuals released after [the one or two year transitional period]." I agree with this analysis.

Moreover, even if Congress had not set an explicit effective date, the terms of § 236(c) itself support the conclusion that it was intended to apply only to aliens released after the statute became effective. *Velasquez,* 37 F.Supp.2d at 671 n. 8. Section 236(c) states that the Attorney General shall take into custody certain inadmissible and deportable aliens "when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." Applying the provision retroactively would render the "when released" language surplusage.[7] Also, a plain meaning reading of the clauses after the "when released" clause adds a temporal understanding to the phrase "when released" and refutes the respondent's argument that the "when released" language describes an alien's continued state of being as "released," and not limited to a particular point and time such as when the alien is freed from incarceration.[8] Finally, had Congress intended

---

**6.** Section 303(b) of the IIRIRA is not codified but can be found in the historical notes to 8 U.S.C. § 1226 (West Supp.1998).

**7.** In *Velasquez,* the court noted that similar language has been held to apply prospectively only. 37 F.Supp.2d at 671 n. 8 (collecting cases). Presumably Congress was aware of this when it included the "when released" language. *See McCarthy v. Bronson,* 500 U.S. 136, 140, 111 S.Ct. 1737, 114 L.Ed.2d 194

(1991) (presuming that when Congress selected statutory language it was familiar with recently announced judicial opinions regarding the subject matter of the statute.)

**8.** It is clear from the language of § 236(c) that Congress meant released from imprisonment. The statute states that the described class of aliens shall be detained "when released . . . without regard to whether the alien may be arrested or *imprisoned again,*" 8

for § 236(c) to apply retroactively, it could have required custody "regardless of when the alien is released" or "at any time after the alien is released." *Alwaday,* 43 F.Supp.2d 1130, 1133 (Congress did not intend for § 236(c) to be applied retroactively).

Respondent also argues that this Court should defer to the BIA's decision in *In re Garvin–Noble* which held that similar language in the rules governing the transitional period between the enactment of IIRIRA amendments and the effective date of § 236(c) applied to aliens who had been convicted, released and had an initial bond determination prior to the invocation of the "Transition Period Custody Rules" ("TPCRs").[9] *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Under *Chevron,* the Court is required to defer to an agency's reasonable interpretation of its governing statute. 467 U.S. at 843, 104 S.Ct. 2778. It is unclear, however, whether *Chevron* deference is appropriate where the issue is the effective date of a statute. *Sandoval,* 166 F.3d at 239. As the Court of Appeals for the Third Circuit recently noted, *Chevron* applies where Congress delegated rule-making power to an agency and thereby sought to rely on agency expertise in the formulation of substantive policy and in interpreting statutes in conformity with that policy and with the benefits of the agency's expertise. However, "[a]n issue concerning a statute's effective date is not one that implicates agency expertise in any meaningful way and does not, therefore, require *Chevron* deference. Rather, the question of a statute's effective date appears to present 'a pure question statutory construction for the courts to decide.'" *Id.* (quoting *INS v. Cardoza–Fonseca,* 480

U.S. 421, 446, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)).

Nevertheless, the Court need not decide whether *Chevron* applies in this context or not. Assuming arguendo that it does, *Chevron* directs the court to determine through the use of "traditional tools of statutory construction" whether Congress has expressed "an intention on the precise question at issue." 467 U.S. at 843 n. 9, 104 S.Ct. 2778; *Sandoval,* 166 F.3d at 240. If the statute is clear, that ends the inquiry. *De Sousa,* 30 F.Supp.2d at 850. Only if the statute is silent or ambiguous is deference appropriate. *Chevron,* 467 U.S. at 842–43, 104 S.Ct. 2778; *De Sousa,* 30 F.Supp.2d at 850. Using traditional tools of statutory construction, the Court concludes that Congress did express an intention on the precise question at issue, namely that § 236(c) was not to be applied to aliens who were released from criminal custody prior to its effective date of October 9, 1998. Thus, applying *Chevron* does not alter the Court's conclusion.

Finally, because I find that the statute does not apply to Grant, I do not reach the question of whether the mandatory detention provision contained in § 236 is unconstitutional. *See Jean v. Nelson,* 472 U.S. 846, 854, 105 S.Ct. 2992, 86 L.Ed.2d 664 (1985) (noting the prudential rule that federal courts should avoid reaching constitutional questions when the issue can be resolved on narrower grounds); *United States v. Clemons,* 843 F.2d 741, 749–50 (3d Cir.), *cert. denied,* 488 U.S. 835, 109 S.Ct. 97, 102 L.Ed.2d 73 (1988).

## IV. Conclusion

For the foregoing reasons, the petition for a writ of habeas corpus was granted by Order of this Court on June 14, 1999; the automatic stay was lifted and the bond

U.S.C. § 1226(c) (emphasis added). "Again" only has meaning if "released" refers to released from imprisonment.

9. The Court notes that internal inconsistency of the respondent's position that the Court

should defer to the BIA's decision in *In re Garvin–Noble* and apply § 236(c) retroactively, but that requiring Grant to exhaust administrative remedies would not be futile.

redetermination decision of the Immigration Judge was reinstated (Document No. 8).[10]

**10.** The respondent argued that the Court should not lift the automatic stay but rather remand this case to the Immigration Judge for a bond redetermination hearing. In so doing, the respondent alludes to other cases in which this has occurred. What the respondent fails to address is that in this case there has already been an individual bond redetermination hearing after which the Immigration Judge issued a written opinion finding that Grant was eligible for release, notwithstanding § 236(c). (Resp.Opp., Exh. 6). The Immigration Judge specifically· found that Grant did not pose a "risk of danger to persons or property of others" nor did he pose a risk of flight. (*Id.*).

There is simply no reason or justification for remanding this case to the Immigration Judge. Both sides have already argued their case before the Immigration Judge and he has rendered a decision. Although the respondent indicated that it might seek some conditions of release at a second bond redetermination hearing, presumably it argued the need for such conditions at the original hearing. In sum, respondent had a full and fair opportunity to argue every facet of its case against Grant before the Immigration Judge. Reinstating the Immigration Judge's decision is not prejudicial to respondent, avoids unnecessarily wasting judicial resources and comports with this Court's notion of justice and propriety. Indeed, remanding this case in light of the fact that Grant is being unlawfully detained would be unconscionable because it would only result in Grant being held in custody for longer than he already has been.

The respondent also argued for a stay of the Court's decision for 24 hours, so that counsel could consult with its client. Having found that the petitioner was being unlawfully detained, the Court could not justify granting the respondent's request.