**Said BOUAYAD, Petitioner,**

v.

**M. Frances HOLMES, Respondent.**

**No. CIV.A. 99–5784.**

United States District Court,
E.D. Pennsylvania.

Dec. 17, 1999.

Richard D. Steel, Steel, Rudnick & Ruben, Philadelphia, PA, for Petitioner.

Stephen J. Britt, James G. Sheehan, U.S. Attorney's Office, Philadelphia, PA, for Respondent.

### MEMORANDUM AND ORDER

KATZ, Senior District Judge.

Petitioner Said Bouayad is detained by the Immigration and Naturalization Service (INS) pending resolution of removal proceedings against him. Now before the court is Mr. Bouayad's petition for a writ of habeas corpus under 28 U.S.C. § 2241(c)(3).

*Background*[1]

Mr. Bouayad is a citizen of Morocco and a lawful permanent resident of the United States. In either August 1995 or June

---

1. Facts are drawn from Mr. Bouayad's petition, unless otherwise indicated. The government has not disputed the general factual assertions in Mr. Bouayad's petition.

1996,[2] Mr. Bouayad received a state court sentence of four years probation in connection with a six-count charge of arson, burglary, theft, and receiving stolen property. In August 1999, Mr. Bouayad was resentenced for a violation of probation to not less than time served and not more than twenty-three months. Following this resentencing, Mr. Bouayad was apparently taken into detention by the INS which commenced removal[3] proceedings against him. The INS alleges that Mr. Bouayad is an aggravated felon[4] and subject to removal under 8 U.S.C. § 1227(a)(2)(iii), which provides for deportation of aliens who have committed certain offenses. The INS originally alleged that Mr. Bouayad was removable as an aggravated felon for committing a crime of violence under 8 U.S.C. § 1101(a)(43)(F) and for committing a theft or burglary offense under 8 U.S.C. § 1101(a)(43)(G). *See* Notice of Removal (Pet.Attach). At Mr. Bouayad's master calender hearing before the Immigration Judge (IJ) on December 1, 1999, the INS orally amended its charging document to encompass only a conviction for one count of arson. *See* Pet. Reply at 2.

Mr. Bouayad is detained under 8 U.S.C. § 1226(c)(1)(B) which mandates that the Attorney General take into custody any alien who is deportable for having committed specific crimes, including aggravated felonies and certain controlled substance offenses.[5] Mr. Bouayad requested and received a bond redetermination hearing before the IJ on November 17, 1999. However, the IJ ruled that 8 U.S.C. § 1226(c) deprived him of jurisdiction to set bond while removal proceedings against Mr. Bouayad are pending.

Mr. Bouayad argues that he is detained in violation of the Constitution and laws of the United States and seeks habeas relief under 28 U.S.C. § 2241(c)(3). Specifically, he argues that the mandatory detention provisions of 8 U.S.C. § 1226(c) violate his right to substantive and procedural due process. Mr. Bouayad also challenges the applicability of both the mandatory detention and the removal provisions to him. Essentially, Mr. Bouayad argues that 8 U.S.C. § 1227 should not be applied retroactively because his convictions were not aggravated felonies when he was originally sentenced. Mr. Bouayad is pressing his statutory claims before the IJ and this court does not rule on them. *See* Pet. Reply at 3–4.

In his petition for a writ of habeas corpus, Mr. Bouayad requests to be released

---

**2.** The date cited in the petition is August 1995, while the date cited in the memorandum in support of the petition is June 1996.

**3.** Recent changes to the immigration laws generally replace the term "deportation" with "removal." *See Sandoval v. Reno,* 166 F.3d 225, 230 n. 4 (3d Cir.1999). The court employs these terms interchangeably.

**4.** An aggravated felony includes "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [sic] at least one year." 8 U.S.C. § 1101(a)(43)(F). Section 18 defines a crime of violence as:

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or the property of another, or
(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person

or property of another may be used in the course of committing the offense.
18 U.S.C. § 16.

**5.** The Attorney General is granted the authority to arrest and detain any alien "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The Attorney General has the discretion to release any such alien on bond or conditional parole, "except as provided in subsection (c)." *Id.* Subsection (c)(1) mandates that "the Attorney General shall take into custody any alien who ... is deportable by reason of having committed ... any [aggravated felony]." 8 U.S.C. § 1226(c)(1). A alien held under 8 U.S.C. § 1226(c)(1) may only be released while in removal proceedings if such release is necessary to provide protection to a witness or person cooperating with a criminal investigation *and* the Attorney General is satisfied that the alien does not pose a danger to other persons or property and will not flee. *See* 8 U.S.C. § 1226(c)(2).

from custody. *See* Pet. at 6. In his reply to the government's response, Mr. Bouayad modified his request for relief and now asks that the IJ assigned to his case be ordered to hold a bond hearing. *See* Pet. Reply at 8.

*Discussion*

## I. Jurisdiction

█ The government concedes that the court has habeas jurisdiction regarding the issue of the constitutionality of the mandatory detention provisions. *See* Gov't Mem. at 3. The court will address the question of jurisdiction, however, given the uncertainty of a district court's jurisdiction in light of the sweeping changes to the immigration laws undertaken by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–32, 110 Stat. 1214 (codified as amended in scattered sections of 8 U.S.C.) (1996), and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104–208, 110 Stat. 3009 (codified as amended in scattered sections of 8 U.S.C.) (1996). *See generally Sandoval v. Reno,* 166 F.3d 225, 229 (3d Cir.1999) (discussing the effect of AEDPA and IIRIRA on judicial review of immigration matters).

The Third Circuit has held that the transitional rules [6] governing judicial review of immigration matters did not divest the district courts of jurisdiction to entertain habeas petitions because Congress did not explicitly remove habeas jurisdiction. *See Sandoval,* 166 F.3d at 237–38; *see also DeSousa v. Reno,* 190 F.3d 175, 182–83 (3d Cir.1999) (holding that *Reno v. American-Arab Anti-Discrimination Committee,* 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), did not overrule *Sandoval*). The *Sandoval* court noted that in the immigration context, the Supreme Court "has historically drawn a sharp distinction between 'judicial review'—meaning [Administrative Procedures Act] review—and the courts'

power to entertain petitions for writs of habeas corpus." *Sandoval,* 166 F.3d at 235. Therefore, the court found that language in the transitional immigration rules foreclosing "judicial review" should not be construed also to foreclose jurisdiction to entertain writs of habeas corpus. *See id.*

The Third Circuit has not explicitly addressed the effect of the jurisdiction-stripping clause of 8 U.S.C. § 1252(b)(9). That clause, which has been termed "the unmistakable zipper clause," *see American-Arab,* 525 U.S. at ——, 119 S.Ct. at 943, states that:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

8 U.S.C. § 1252(b)(9). Courts are divided regarding the reach of the "zipper clause" to habeas suits challenging an alien's mandatory detention while removal proceedings are pending. *Compare Richardson v. Reno,* 180 F.3d 1311, 1315 (11th Cir.1999) (holding 8 U.S.C. § 1252(b)(9) precludes section 2241 review of challenges to removal orders, removal proceedings, and detention pending removal), *with Parra v. Perryman,* 172 F.3d 954, 957 (7th Cir.1999) (holding district court had habeas jurisdiction to consider a constitutional challenge to mandatory detention without explicitly addressing 8 U.S.C. § 1252(b)(9)); *Sierra Tapia v. Reno,* No. Civ. 99–986 TW(RBB), 1999 WL 803898, at *3 (S.D.Cal. Sept.30, 1999) (suggesting that, despite the restrictions of 8 U.S.C. § 1252(b)(9), district courts may retain some limited constitutional habeas jurisdiction to review the validity of INS detention). In this circuit, however, the clear rule set forth in *Sando-*

---

**6.** IIRIRA contained both permanent rules, which generally became effective on April 1, 1997, and transitional changes to judicial review which generally became effective on Oc-

tober 30, 1996, and applied to aliens in removal proceedings before April 1, 1997. *See Sandoval,* 166 F.3d at 229 (discussing the permanent and transitional rules).

*val* requiring an explicit statement from Congress foreclosing habeas corpus jurisdiction rather than simply the preclusion of judicial review renders the jurisdiction-stripping provisions of 8 U.S.C. § 1252(b)(9) inapplicable to habeas jurisdiction.[7] Thus, the court may entertain Mr. Bouayad's habeas petition.[8]

II. Due process

■ It is well established that aliens have a right to due process under the Fifth Amendment. *See Reno v. Flores*, 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993); *Chi Thon Ngo v. INS*, 192 F.3d 390, 396 (3d Cir.1999). However, it is also well established that Congress has broad powers over immigration and may " 'make[ ] rules that would be unacceptable if applied to citizens.' " *Chi Thon Ngo*, 192 F.3d at 395–96 (quoting *Mathews v. Diaz*, 426 U.S. 67, 79–80, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976)). District courts have split over the question of whether the mandatory detention provisions violate an alien's due process rights. *See e.g., Danh v. Demore*, 59 F.Supp.2d 994, 1001–05 (N.D.Cal.1999) (mandatory detention provisions violate due process); *Van Eeton v. Beebe*, 49 F.Supp.2d 1186, 1190 (D.Or.1999) (same); *Martinez v. Greene,* 28 F.Supp.2d 1275, 1282–84 (D.Colo.1998) (same). *But see, e.g., Galvez v. Lewis*, 56 F. Supp.2d 637, 646–49 (E.D.Va.1999) (mandatory de-

tention provisions are constitutional); *Diaz–Zaldierna v. Fasano*, 43 F.Supp.2d 1114, 1118–21 (S.D.Cal.1999) (same). The only circuit that has confronted this issue squarely, the Seventh Circuit, upheld 8 U.S.C. § 1226(c) on the grounds that a fundamental liberty interest was not implicated. *See Parra*, 172 F.3d at 958. This court declines to follow *Parra* and joins those courts finding that the mandatory detention provisions are unconstitutional.

■ Mr. Bouayad's fundamental right to liberty is unconstitutionally abridged by the mandatory detention provisions. *See Foucha v. Louisiana*, 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause"). The government argues, and the court recognizes, that Mr. Bouayad does not possess an absolute right to liberty. Certainly Congress may detain aliens during the pendency of removal proceedings against them. *See Flores* 507 U.S. at 302, 113 S.Ct. 1439; *Carlson v. Landon*, 342 U.S. 524, 543, 72 S.Ct. 525, 96 L.Ed. 547 (1952) (holding that aliens in deportation proceedings who, in the discretion of the Attorney General, posed a risk to the community because of communist activity could be detained). However, 8 U.S.C. § 1226(c) imposes an

---

7. The court recognizes that a contrary conclusion was reached in *Guy v. Reno*, No. Civ. A. 99–3589, 1999 WL 718554 (E.D.Pa. September 2, 1999), in which the court found that "[i]t is apparent from a straightforward reading of the various statutory provisions that Congress expressly divested district courts of [habeas] jurisdiction to review final removal orders by conferring jurisdiction solely on the court of appeal." *Id.* at *4. However, *Guy* can be distinguished in that it involved a challenge to a final order of removal, rather than a challenge to mandatory detention during pending removal proceedings, and was premised on the theory that the purpose of 8 U.S.C. § 1252(b)(9) was to channel all review of final orders to the court of appeals. *See id.*

8. The *Sandoval* rule would bar application of the jurisdiction-stripping clause of 8 U.S.C. § 1226(c) since that clause also does not ex-

plicitly repeal a court's habeas jurisdiction. *See* 8 U.S.C. § 1226(c) ("No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole."). *See also Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir.1999) (holding 8 U.S.C. § 1226(e) does not "foreclose challenges to § 1226(c) itself, as opposed to decisions implementing that subsection"); *Grant v. Zemski*, 54 F.Supp.2d 437, 440–41 (E.D.Pa.1999) (holding that 8 U.S.C. § 1226(e) does not strip the court of habeas jurisdiction because Congress did not explicitly repeal habeas jurisdiction). *But see Edwards v. Blackman*, 48 F.Supp.2d 477, 480, *recons. den.*, 56 F.Supp.2d 508, 512 (M.D.Pa.1999) (finding 8 U.S.C. § 1226(e) repealed habeas jurisdiction to review challenges to mandatory detention).

absolute restriction on Mr. Bouayad's liberty and forecloses any possibility of a hearing on the necessity of his detention. *See Danh,* 59 F.Supp.2d at 1003 (framing the right implicated by 8 U.S.C. 1226(c) as "the modest right to an individualized bond determination regarding whether release pending deportation is appropriate").

As the Third Circuit recognized in *Chi Thon Ngo,* due process demands an underlying justification for the detention of aliens. The petitioner in *Chi Thon Ngo* was an alien whose order of removal was final but who was still detained in the United States because his native country, Vietnam, refused to accept him. *See Chi Thon Ngo,* 192 F.3d at 392. The court emphasized the need for an individualized evaluation of the petitioner's detention: "The process due even to deportable and excludable aliens requires an opportunity for an evaluation of the individual's current threat to the community and his risk of flight." *Id.* at 398. The court held that the petitioner's continued detention did not violate due process as long as there was a possibility of the alien's eventual departure, there were adequate and reasonable provisions for the grant of parole by INS, and the detention was necessary because of risk of flight or threat to the community. *See id.* at 397. Mr. Bouayad, who is not yet under a final order of removal, also deserves an individual evaluation regarding his continued detention.

The government argues that mandatory detention protects the public from criminal aliens, especially violent ones, who are in deportation proceedings; ensures that the aliens are readily available for removal; and lessens the incentive of aliens to undertake "frivolous and spurious litigation." Gov't Mem. at 24. The government relies on a report by the Justice Department, and cited in *Parra,* that found that ninety

percent of criminal aliens released on bond absconded. *See* Gov't Mem. at 34; *see also Parra,* 172 F.3d at 956.

None of the justifications advanced by the government are sufficient since these objectives can be satisfied by conducting individual hearings. While the risk of flight by aliens may be significant, the public can still be protected by a careful evaluation of an individual alien's case, which should result in the detention of those who are likely to flee. The need for a blanket rule of detention of certain aliens rather an individual evaluation is undermined by 8 U.S.C. § 1231(a)(3), (6), which provide that ninety days after an order of removal becomes final, an alien who has not yet been removed from the country may be released from detention in the discretion of the Attorney General. *See Martinez,* 28 F.Supp.2d at 1283–84. Aliens who are under a final order of removal surely present a greater risk of flight or danger to the community, yet their continued detention is not mandated. Given that a hearing within a reasonable time period after removal proceedings are commenced will meet the government's concerns regarding protection of the community and lessening the risk of flight, delaying a hearing until *after* the alien has been ordered removed is excessive.[9] A bond hearing would undoubtedly reduce the risk of an erroneous deprivation of liberty. The administrative costs would not be unduly burdensome given that such a hearing is already available to removable aliens not subject to mandatory detention, *see* 8 U.S.C. § 1226(a), and to aliens who have been found removable. *See* 8 U.S.C. § 1231(a)(3), (6); *see also Danh,* 59 F.Supp.2d at 1005 (noting that the administrative burden is not great in an overall deportation process that could potentially take years and that allowing release on

---

9. The *Diaz–Zaldierna* court reached a contrary conclusion in holding that it was reasonable to presume that anyone committing a serious controlled substance offense was a threat to "social peace" and therefore a hearing was not warranted. *See Diaz–Zaldierna,* 43 F.Supp.2d at 1120. While many aliens who have been convicted of crimes that render them deportable may well be a threat, this court finds that deeming such all such aliens to be a threat *per se* is too general a characterization.

bond may serve the government's interest by freeing jail space).

Mandatory detention also sweeps too broadly in meeting the government's objective of deterring spurious litigation because it creates the danger of deterring those with non-frivolous grounds for contesting their removal, especially since such proceedings may take several years to resolve. *See Tipu v. INS*, 20 F.3d 580, 582 (3d Cir.1994) (noting that the Board of Immigration Appeals took six years to decide plaintiff's administrative appeal); *Danh*, 59 F.Supp.2d at 1005 (noting that deportation proceedings may take years). Mandating the detention of aliens in order to deter litigation is excessive as well.

The government, relying on the Seventh Circuit's holding in *Parra*, argues vigorously that no liberty interest is implicated by the mandatory detention provisions. Under the reasoning of *Parra*, there is no constitutional infirmity in the mandatory detention provisions because the changes to the immigration law make it a virtual certainty that aliens convicted of certain crimes will be deported. *See Parra*, 172 F.3d at 957; *see also Sierra–Tapia*, 1999 WL 803898, at *6 (following *Parra* in holding that the "strength of an alien's due process liberty interest ... depends on the likelihood that the alien will be permitted to legally remain in the United States after the conclusion of removal proceedings").

The court declines to follow *Parra* in collapsing the merits of an alien's claim to be free of detention into the merits of the removal proceedings against him or her. The interest affected by the mandatory detention provisions is not whether an alien may remain in this country, but whether the alien must be automatically detained while removal proceedings are pending. The Third Circuit's holding in *Chi Thon Ngo* clarifies that the issue of removability is distinguishable from the issue of detention. In *Chi Thon Ngo*, the petitioner was under a final order of removal; there was no question that he would have to leave this country when and

if Vietnam agreed to accept him. *See Chi Thon Ngo*, 192 F.3d at 392. However, the court found that due process still necessitated meaningful periodic reviews of the reasons for the petitioner's continued detention-namely whether he presented a risk of flight or a danger to the community. *See id.* at 398.

Admittedly, the petitioner in *Chi Thon Ngo* was unable to return to Vietnam and so could not simply end his detention by leaving this country, an option upon which the court in *Parra* relied in finding that the mandatory detention provisions were constitutional. *See Parra*, 172 F.3d at 958. However, where, as here, a petitioner contests whether he is removable under 8 U.S.C. § 1227, the option of ending detention by departing this country does not cure any constitutionality infirmity in the mandatory detention provisions. *See Danh*, 59 F.Supp.2d at 1002–03 (distinguishing *Parra* on the grounds that petitioners were vigorously challenging their deportability). To hold otherwise would be to put the cart before the horse by requiring an alien who is subject to mandatory detention and not yet under a final order of removal to forego any challenges to the removal proceeding in order to secure his or her liberty.

## III. Statutory Claims

Because the court finds that the mandatory detention provisions of 8 U.S.C. § 1226(c) are unconstitutional and provide a basis for granting Mr. Bouayad's writ of habeas corpus, it does not decide any of his statutory claims.

### Conclusion

While Mr. Bouayad does not have an absolute right to remain at liberty while the INS undertakes removal proceedings against him, due process requires an individualized hearing on the necessity of this detention. Accordingly, the court will grant Mr. Bouayad's petition for a writ of habeas corpus unless the government begins a review process, including an individ-

ual hearing, within ninety days to determine whether his continued detention is necessary to prevent a risk of flight or a threat to the community. In undertaking this review, the INS is reminded that "grudging and perfunctory review is not enough to satisfy the due process right to liberty, even for aliens." *Chi Thon Ngo,* 192 F.3d at 398.

## ORDER

**AND NOW**, this 17th day of December, 1999, upon consideration of the petition for a writ of habeas corpus, the response, and the reply to the response thereto, it is hereby **ORDERED** that the said petition is **GRANTED**. Petitioner is to be **RELEASED** from custody unless the government commences a review process, including an individual hearing, within ninety days to determine whether the continued detention of petitioner is necessary to prevent risk of flight or danger to the community.