Chandra D. SHARMA, et al.

v.

John ASHCROFT, et al.

No. CIV. A. 01–1231.

United States District Court, E.D. Pennsylvania.

May 25, 2001.

Steven A. Morley, Bagia and Morley, Phila, Thomas E. Moseley, Newark, NJ, for Chandra D. Sharma, Subodh C. Sharma, Petitioners.

Linda L. Bocchino, Assistant U.S. Attorney, James G. Sheehan, U.S. Attorney's Office, Philadelphia, PA, for John Ashcroft, Attorney General, Mary Ann Wyrsch, Acting Commissioner of the Immigration & Naturalization Service, Charles Zemski, Acting District Director, Edward Nordmark, Assistant District Director for Detention and Deportation, Susan Gerlinski, Warden, Low Security Correctional Institution Allenwood, Immigration and Naturalization Service, Respondents.

### MEMORANDUM & ORDER

SURRICK, District Judge.

Petitioners Chandra D. Sharma and Subodh C. Sharma brought the instant habeas corpus petition pursuant to 28 U.S.C. § 2241 challenging the constitutionality of their mandatory detention by the Immigration & Naturalization Service ("INS"). Petitioners were detained by the INS after an Immigration Judge deemed them deportable under the Immigration & Nationality Act of 1952, as amended, 8 U.S.C. §§ 1101 et seq. (the "INA") as a result of each of them having been convicted of an aggravated felony. Petitioners are being detained in the custody of the INS at the Low Security Correctional Institution in Allenwood ("LSCI Allenwood") pending the outcome of their appeal of their respective orders of deportation. Because Section 236(c) of the INA mandates the detention of deportable immigrants who were convicted of aggravated felonies, see 8 U.S.C. § 1226(c), neither Petitioner has been given a bail hearing to determine whether his release is appropriate pending the outcome of their appeal.

## I. BACKGROUND

Petitioner Chandra Sharma, who is 76 years old, immigrated in 1981 as a lawful permanent resident. His son, Petitioner Subodh Sharma, first came to this country from his native India in 1974 and became a lawful permanent resident in 1979. Petitioners have established deep roots in this country, and several of their family members are United States citizens. Chandra Sharma has two adult sons, other than Subodh Sharma, who are United States citizens. Chandra's wife Sushila Sharma is a lawful permanent resident with a pending naturalization application. Subodh Sharma's wife, Dr. Ranjana Sharma, is a naturalized United States citizen and physician at an emergency care facility. His son Aditya Sharma and daughter Jyoti Sharma are both United States citizens.

In July, 1998, Petitioners were convicted of bank fraud (18 U.S.C. § 1344), conspiracy to commit bank fraud, false statements on loan application, etc. (18 U.S.C. § 371) and the making of false statements (18 U.S.C. § 1014). *United States v. Sharma*, Crim. Dkt. No. 96–321 (M.D.Pa.).

The case involved events that dated from 1986 through 1992 and arose from Petitioners' efforts to obtain financing for their family business. Throughout the criminal proceedings, Petitioners were permitted to remain at liberty on bail, appeared in a timely fashion for every required appearance, and fully complied with the conditions of their release. Moreover, in passing sentence on Petitioners after their conviction, Judge Rambo of the United States District Court for the Middle District of Pennsylvania, recommended that the "Bureau of Prisons not impose harsher conditions of confinement" because of the Sharma's resident alien status. She also expressly found that the Sharmas do not constitute "a threat to the safety of the public."

Removal proceedings against Petitioners began while they were serving their federal criminal sentence at LSCI Allenwood. In a decision dated December 19, 2000, the Immigration Judge determined that Petitioners were removable under Sections 101(a)(43)(M)(i) and 237(a)(2)(A)(iii) of the INA as a result of each having been convicted of an aggravated felony. 8 U.S.C. §§ 1101(a)(43)(M)(i), 1227(a)(2)(A)(iii). On January 9, 2001 the Immigration Judge denied Petitioners' motion for reconsideration but noted that the matter should be reviewed by the Board of Immigration Appeals (the "BIA").

Petitioners took a timely appeal to the BIA from the decision of the Immigration Judge. To date, the transcripts of Petitioners' removal hearing have not been transcribed and no date has been set for submission of their brief on appeal. Only after the BIA proceedings are complete will Petitioners be able, if necessary, to challenge their deportation in federal court.

Petitioners have been model prisoners at LSCI and have not had any disciplinary problems of any kind. Chandra Sharma is in poor health and suffers from a calcified prostate and kidney stone.

## II. NATURE AND STAGE OF PROCEEDING

Petitioners have remained in detention under the custody of the INS since the completion of their respective federal sentences in November 2000. They have not been afforded a bail hearing to determine the appropriateness of their release pending the outcome of their appeal. Section 236(c) of the INA provides, in pertinent part:

> The Attorney General shall take into custody any alien who—... is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title ... when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense....

8 U.S.C. § 1226(c)(1)(B). Section 237(a)(2)(A)(iii) of the INA provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). The crimes for which Petitioners were convicted constitute an "aggravated felony" as defined by the INA. See 8 U.S.C. § 1101(a)(43)(M)(i). Under the circumstances Section 236(c) requires the INS to detain Petitioners during the pendency of their removal proceedings. Petitioners contend that the failure of the INA to grant them a bail hearing violates their due process and Eighth Amendments rights under the Constitution. Petitioners seek relief from this Court in the form of an order requiring that the INS conduct a bail hearing, as done in similar cases. See

*United States v. Zemski,* 121 F.Supp.2d 814 (E.D.Pa.2000); *Bouayad v. Holmes,* 74 F.Supp.2d 471, 476 (E.D.Pa.1999).

## III. ANALYSIS OF LAW

### A. *Jurisdiction*

■ The District Court has jurisdiction over the petition for habeas corpus under 28 U.S.C. § 2241. *Chi Thon Ngo v. Immigration and Naturalization Service,* 192 F.3d 390, 393 (3d Cir.1999) (exercising jurisdiction over habeas petition of excludable alien challenging continued detention without bail hearing), citing *Sandoval v. Reno,* 166 F.3d 225, 237–38 (3d Cir.1999) and *DeSousa v. Reno,* 190 F.3d 175, 180 (3d Cir.1999); *Bouayad v. Holmes,* 74 F.Supp.2d 471, 473 (E.D.Pa.1999); *Grant v. Zemski,* 54 F.Supp.2d 437, 439–41 (E.D.Pa.1999) (ruling that INA did not contain clear statement that Congress sought to eliminate habeas jurisdiction).

### B. *The Petition Warrants Relief in The Form of a Bail Hearing.*

■ It is well established that aliens have a right to due process under the Fifth Amendment. *See Reno v. Flores,* 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993); *Chi Thon Ngo v. INS,* 192 F.3d 390, 396 (3d Cir.1999). It is also well established that Congress has broad powers over immigration and may " 'make[ ] rules that would be unacceptable if applied to citizens.' " *Chi Thon Ngo,* 192 F.3d at 395–96, quoting *Mathews v. Diaz,* 426 U.S. 67, 79–80, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976); *Flores,* 507 U.S. at 305–06, 113 S.Ct. 1439.

The Supreme Court has held that Congress may allow for the detention of aliens under certain circumstances. For example, an alien suspected of entering the country illegally may be detained pending his deportation hearing. *Flores,* 507 U.S. at 306, 113 S.Ct. 1439, citing *Carlson v.*

*Landon,* 342 U.S. 524, 538, 72 S.Ct. 525, 96 L.Ed. 547 (1952) and *Wong Wing v. United States,* 163 U.S. 228, 235, 16 S.Ct. 977, 41 L.Ed. 140 (1896) ("We think it clear that detention or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens, would be valid. Proceedings to exclude or expel would be in vain if those accused could not be held in custody pending the inquiry into their true character, and while arrangements were being made for their deportation."). Moreover, in enacting the precursor to 8 U.S.C. § 1252(a), Congress eliminated any presumption of release pending deportation, committing that determination to the discretion of the Attorney General. *See Carlson,* 342 U.S. at 538–540, 72 S.Ct. 525 (holding that aliens in deportation proceedings who, in the discretion of the Attorney General, posed a risk to the community because of communist activity could be detained).

■ However, Section 236(c) imposes an absolute restriction on the liberty of each of the Petitioners in this case by foreclosing any possibility of a hearing on the necessity of detention. The question of whether the mandatory detention of a deportable alien violates the alien's due process rights has not been addressed by our Court of Appeals and has not been answered uniformly by other courts. Compare *Bouayad v. Holmes,* 74 F.Supp.2d 471 (E.D.Pa.1999) (mandatory detention provision unconstitutional) and cases cited therein with *Diaz–Zaldierna v. Fasano,* 43 F.Supp.2d 1114, 1118–21 (S.D.Cal.1999) (mandatory detention provision constitutional). The only appellate court decision to have directly addressed the issue, *Parra v. Perryman,* 172 F.3d 954 (7th Cir.1999), upheld the constitutionality of mandatory detention for deportable aliens convicted of an aggravated felony, reasoning that per-

sons subject to Section 236(c) have forfeited any legal entitlement to remain in the United States and can unilaterally end their confinement at any time by returning to their native land. *Id.* at 958.

In *Chi Thon Ngo*, the Court of Appeals for the Third Circuit addressed the related issue of when an excludable alien, as opposed to a deportable alien, may be mandatorily detained after having been convicted of an aggravated felony. The Court recognized that due process demands an underlying justification for the detention of aliens. The petitioner in *Chi Thon Ngo* was an alien whose order of removal was final but who was still detained in the United States because his native country, Vietnam, refused to accept him. *See Chi Thon Ngo*, 192 F.3d at 392. The Court of Appeals emphasized the need for an individualized evaluation of the petitioner's detention by stating that "[t]he process due even to excludable aliens requires an opportunity for an evaluation of the individual's current threat to the community and his risk of flight." *Id.* at 398. The court held that the petitioner's continued detention did not violate due process as long as 1) there was a possibility of the alien's eventual departure, 2) there were adequate and reasonable provisions for the grant of parole by INS, and 3) the detention was necessary because of risk of flight or threat to the community. *Id.* at 397.

Although the *Chi Thon Ngo* court expressly limited its holding to excludable aliens and expressed no view on situations involving deportable aliens, *see id.* at 398 n. 7, in the case of *United States v. Zemski*, 121 F.Supp.2d 814 (E.D.Pa.2000), the rational of *Chi Thon Ngo* was extended to require a bail hearing for a deportable alien held in detention while an appeal of his deportation decision remained pending. The facts in the *Zemski* case are very similar to the facts in the instant case. In *Zemski*, the petitioner had been convicted of an aggravated felony and was found removable under the INA. The petitioner appealed the decision of deportation, but remained in detention. A briefing schedule for his appeal of the removal decision had not been set, and the petitioner did not know when a final decision would be made. The District Court concluded that, as in *Chi Thon Ngo*, the petitioner was subject to an "indeterminable detention." *Zemski*, 121 F.Supp.2d at 817 n. 7. Drawing from the Court of Appeal's decision, the *Zemski* court concluded that "there is no reason why an excludable alien would be entitled to greater protection than a deportable alien: 'Once an alien gains admission to our country and begins to develop the ties that go with permanent residence, his constitutional status changes accordingly.'" *Id.* at 818, quoting *Landon v. Plasencia*, 459 U.S. 21, 32, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982). The *Zemski* Court ordered that petitioner be given an individualized evaluation, including an individual hearing and decision, to determine whether the continued detention of Petitioner is necessary to prevent risk of flight or danger to the community. *Id.* at 818. In reaching this decision, the court observed that "[i]f an alien who is subject to a *final* removal order is constitutionally entitled to an individualized assessment of the risk of flight and danger to the community on a current basis, then *a fortiori*, an alien who is not yet subject to a final removal order must be accorded the same opportunity." *Id.* at 817.

Admittedly, the petitioner's situation in *Chi Thon Ngo* was more extreme than that of the petitioner in *Zemski* and the petitioners in the instant case. The petitioner in *Chi Thon Ngo*, although removable under the INA, could not be repatriated because his native country would not accept him. Because there was no way of knowing if the petitioner would ever be deport-

ed, the duration of his detention was truly "indeterminable." Left without any legal recourse, the petitioner was "literally in a legal limbo." *See Juarez–Vasquez v. Holmes,* Civ. A. No. 00–4727, 2000 WL 1705775, \*2 (Weiner, J.) (E.D.Pa.2000) (discussing *Chi Thon Ngo* ). Here, Petitioners will remain in detention only as long as they appeal the decision to deport them. This is a factor that was relied upon heavily in *Parra v. Perryman,* 172 F.3d 954, 958 (7th Cir.1999) (an alien convicted of an aggravated felony could avoid a prolonged detention by choosing to forego such litigation and return to their native country).

Several other courts of this District have declined to follow *Parra. See Bouayad v. Holmes,* 74 F.Supp.2d 471, 476 (E.D.Pa. 1999) (petitioner granted a bail hearing); *Juarez–Vasquez v. Holmes,* Civ. A. No. 00–4727, 2000 WL 1705775, \*2 (Weiner, J.) (E.D.Pa.2000) (same). In *Bouayad,* the court stated:

> [W]here, as here, a petitioner contests whether he is removable under 8 U.S.C. § 1227, the option of ending detention by departing this country does not cure any constitutionality infirmity in the mandatory detention provisions. To hold otherwise would be to put the cart before the horse by requiring an alien who is subject to mandatory detention and not yet under a final order of removal to forego any challenges to the removal proceeding in order to secure his or her liberty.

*Bouayad,* 74 F.Supp.2d at 476 (internal citations omitted). We find application of this logic to Petitioners' circumstance to be sound, particularly because, as aliens convicted of aggravated felonies, the INA prohibits their voluntary departure, see 8 U.S.C. § 1229c, and thus requires that they remain in detention while they pursue their appeal. Such a legal quagmire con-

stitutes a denial of Petitioner's due process right to be free from unnecessary detention.

Petitioners have asked this Court for an immediate release on bail through the exercise of the federal courts' "inherent authority to admit to bail individuals properly within their jurisdiction." *See Mapp v. Reno,* 241 F.3d 221, 226 (2d Cir.2001). We deny such relief. *Cf. Landano v. Rafferty,* 970 F.2d 1230, 1239 (3d Cir.1992) (release of prisoner on bail during pendency of habeas petition requires finding of "extraordinary circumstances"). However, we will require that the INS provide each Petitioner with the requisite individualized hearing as did the courts in *Zemski* and *Bouayad.*

## IV. CONCLUSION

Under the circumstances we conclude that the mandatory detention of Petitioners by the INS pending the outcome of their appeal of the decision to deport them is a violation of their respective due process rights. Accordingly we will order that the INS conduct a bail hearing to determine the necessity of detaining each Petitioner.

An appropriate order follows.

## ORDER

AND NOW, this 24st day of May, 2001, IT IS HEREBY ORDERED THAT the petition for a writ of habeas corpus under 28 U.S.C. § 2241 is GRANTED as follows:

1. Petitioners are to be RELEASED from custody unless Respondent commences an individualized evaluation, including an individual hearing and decision within thirty (30) days, to determine whether the continued detention of each Petitioner is necessary to prevent risk of flight or danger to the community.

2. If either Petitioner demonstrates that he is not a threat to the community or a flight risk, Respondent immediately shall order said Petitioner released from custody on bond upon reasonable conditions.

3. So long as either Petitioner remains in INS custody, the procedure set forth in paragraph 1 hereof shall be repeated every six (6) months if said Petitioner so requests.

AND IT IS SO ORDERED.