**Randy Ricardo DEAN, Petitioner–Plaintiff,**

v.

**John ASHCROFT, Attorney General of the United States; Kevin D. Rooney, Acting Commissioner, Immigration and Naturalization Service; Andrea Quarantillo, District Director, Immigration and Naturalization Service; Immigration and Naturalization Service; United States Department of Justice, Respondents–Defendants.**

No. Civ. 01–3380(WHW).

United States District Court, D. New Jersey.

Dec. 7, 2001.

Eileen Bretz, Bretz & Coven, LLP, New York City, for Petitioner.

Peter G. O'Malley, Office of U.S. Attorney, Newark, NJ, for Respondents.

## OPINION

WALLS, District Judge.

Petitioner Randy Ricardo Dean, a lawful permanent resident in this country, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 requesting

this Court to order an immediate bond hearing before an immigration judge or release him from detention pending his removal proceedings. Petitioner asserts that mandatory detention under § 236(c) of the Immigration and Nationality Act, 8 U.S.C. § 1226(c) (the "Act") violates his substantive and procedural due process rights by depriving him of an opportunity to demonstrate his suitability for release. Respondents assert that mandatory detention under § 236(c) pending administrative removal is constitutional. This Court finds that § 236(c) is unconstitutional as it applies to Petitioner and grants Petitioner's request for an immediate bond hearing before an immigration judge.

## FACTS AND PROCEDURAL BACKGROUND

Petitioner, a native and citizen of Trinidad, was admitted to the United States as a lawful permanent resident on March 21, 1976. On January 27, 1989, Petitioner pled guilty to distributing cocaine in violation of 21 U.S.C. § 841(a)(1) and was sentenced in the United States District Court for the Eastern District of New York on October 30, 1997 to a fifty-seven month term of imprisonment. On June 14, 2001, a Notice to Appear in Removal Proceedings (NTA) was issued, charging Petitioner with § 237(a)(2)(A)(iii) removal based on his conviction of an aggravated felony, and under § 237(a)(2)(B)(i) based on his conviction of a controlled substance violation.

On July 2, 2001, Petitioner was released from the Federal Bureau of Prisons where he was serving his criminal sentence and was taken into the custody of the Immigration and Naturalization Service ("INS"). A bond hearing was held on July 17, 2001 before an immigration judge in Newark, New Jersey who, after several adjournments, determined that the Petitioner was eligible for a waiver of inadmissibility under § 212(c) of the Act, 8 U.S.C. § 1182,[1] and that he was subject to mandatory detention pursuant to § 236(c). However, the judge also noted that if the District Court found that § 236(c) was unconstitutional, then the Petitioner should be released upon the posting of a $10,000 bond. The INS reserved appeal.

A hearing on the merits of the case under § 212(c) of the Act was set for September 18, 2001 and then adjourned until October 30, 2001. Pending the hearing Petitioner is being held at the Hudson County Jail pursuant to § 236(c).

## DISCUSSION

Before addressing the merits, the Court must establish that subject matter jurisdiction exists over Petitioner's claim. Under 28 U.S.C. § 2241, district courts have jurisdiction to entertain challenges to § 236(c) itself, as opposed to the manner in which it is enforced. *See Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir.1999). ("That statute does not purport to foreclose challenges to [§ 236(c) ] itself, as opposed to decisions implementing that

---

1. Section 212(c) of the Act provides that the Attorney General may, in his discretion, waive certain grounds of inadmissibility for lawful permanent residents who have accrued seven years of legal domicile in the United States, who have not served five years for one or more aggravated felonies, and who can show positive equities such as rehabilitation, successful participation in drug or alcohol programs, work history, mitigating facts relating to the crime, long residence in the United States, residence since a very young age, service in the United States military, dependent children or elderly parents, contributions to the community, and the hardship of being returned to a country where the individual may have no ties or may not speak the language. This relief has been extended to certain criminal grounds of deportability by case law. *See Francis v. INS*, 532 F.2d 268 (2d Cir.1976).

subsection."). Respondents concede jurisdiction of this Court. (Respondents' Answer to Habeas Corpus Petition and Application to Dismiss For Failure to State a Claim, at 5) ("This court has jurisdiction under 28 U.S.C. § 2241 to review statutory and constitutional challenges to an alien's detention.").

The issue before this court is whether § 236(c) violates Petitioner's due process rights by requiring detention without a hearing pending removal proceedings. The statute provides in pertinent part:

> The Attorney General shall take into custody any alien who . . . is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title . . . when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1)(B). An alien subject to this provision may only be released on bond if he is associated with the federal witness protection program and is not a flight risk or a danger to others. 8 U.S.C. § 1226(c)(2).

■ The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. This affords protection to individuals against two types of government action—substantive and procedural. Substantive due process prevents the government from engaging in conduct that "shocks the conscience" regardless of the procedure provided. *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952). Procedural due process requires that government action which deprives a person of life, liberty or property be implemented in a fair manner. *See*

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

■ It is well established that resident aliens are entitled to the protections of due process of law in deportation proceedings. *See Landon v. Plasencia*, 459 U.S. 21, 33, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982) ("[O]nce an alien gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes accordingly."). *See Kiareldeen v. Reno*, 71 F.Supp.2d 402 (D.N.J.1999). It is equally clear, however, that Congress has broad powers over immigration and has the authority to enact rules that would be unconstitutional if applied to citizens. *See Mathews v. Diaz*, 426 U.S. 67, 68, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976).

The Supreme Court has not addressed the constitutionality of the mandatory detention provisions of § 236(c). Further, district courts are currently split over the issue of whether § 236(c) violates an alien's due process rights. The Seventh Circuit, the only circuit that has confronted the issue directly, held that § 236(c) was constitutional on the grounds that a fundamental liberty interest was not implicated. *See Parra v. Perryman*, 172 F.3d 954 (7th Cir.1999).

### I. Substantive Due Process

■ Substantive due process requires courts to scrutinize government action which infringes on an individual's liberty interest. The stronger the individual liberty interest, the greater the level of judicial scrutiny. *See Reno v. Flores*, 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). Petitioner asks the court to evaluate his claim under the compelling interest test, which prohibits the government from infringing one's "fundamental liberty interests *at all*, no matter what process is

provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Id.; see also United States v. Salerno*, 481 U.S. 739, 748, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Respondents contest Petitioner's proposal, arguing for a more deferential standard, which would uphold the provision so long as it is rationally related to a conceivable and legitimate end of government. *See Parra*, 172 F.3d at 954.

As said, the only Court of Appeals that has directly confronted this issue, the Seventh Circuit, upheld § 236(c) on the grounds that mandatory detention did not implicate a fundamental liberty interest because "[p]ersons subject to [§ 236(c) ] have forfeited any *legal* entitlement to remain in the United States and have little hope of clemency." *Id.* at 958. In *Parra*, the petitioner conceded removability, and Mexico, his native country, was willing to accept his return. Therefore, the court found that the petitioner had a clear alternative to detention—consenting to his removal to Mexico. The Seventh Circuit indicated in dictum, however, that under certain circumstances an individual's removal would not be so inevitable and "resort to the Great Writ[2] may be warranted." *Id.* at 957. These circumstances included, but were not limited to, claims made by persons "detained under [§ 236(c) ] who say that they are citizens rather than aliens, who contend that they have not been convicted of one of the felonies that authorizes removal, or who are detained indefinitely because the nations of which they are citizens will not take them back." *Id.*

Since *Parra*, many district courts have been confronted with the issue of whether § 236(c) is constitutional as applied to petitioners who have not conceded removability. Many courts, including some in the Third Circuit, have found § 236(c) unconstitutional distinguishing *Parra* and finding that the provision implicated a fundamental liberty interest. *See e.g. Danesh v. Jenifer*, No. 00–CV–74409–DT, 2001 WL 558233, at *6 (E.D.Mich. Mar.27, 2001) ("[t]he *Parra* case is distinguishable in that the Seventh Circuit found it significant that the petitioner had conceded all the elements required for removal."); *Sharma v. Ashcroft*, 158 F.Supp.2d 519 (E.D.Pa.2001); *Zgombic v. Farquharson*, 89 F.Supp.2d 220, 234 (D.Conn.2000); *United States ex rel. Radoncic v. Zemski*, 121 F.Supp.2d 814 (E.D.Pa.2000); *Juarez–Vasquez v. Holmes*, No.C.A. 00–4727, 2000 WL 1705775 (E.D.Pa.2000); *Koita v. Reno*, 113 F.Supp.2d 737 (M.D.Pa.2000); *Chukwuezi v. Reno*, 2000 WL 1372883 (M.D.Pa. 2000); *Cabreja–Rojas v. Reno*, 999 F.Supp. 493 (S.D.N.Y.1998). As the Court in *Bouayad v. Holmes* explained:

> [W]here, as here, a petitioner contests whether he is removable under 8 U.S.C. § 1227, the option of ending detention by departing this country does not cure any constitutionality infirmity in the mandatory detention provisions. To hold otherwise would be to put the cart before the horse by requiring an alien who is subject to mandatory detention and not yet under a final order of removal to forego any challenges to removal proceeding in order to secure his or her liberty.

74 F.Supp.2d 471, 476 (E.D.Pa.1999).

Other district courts have resisted attempts to narrow the Seventh Circuit's holding. These courts have found that the right to an individual hearing, to determine flight risk or danger, before being detained pending a final deportation order

---

**2.** The *Parra* court defines the Great Writ or writ of habeas corpus as "a device to prevent detention by the Executive Branch without trial." 172 F.3d at 957.

is not fundamental. *See e.g. Patel v. Zemski,* No. Civ. A. 01–405, 2001 WL 503431, at *2 (E.D.Pa. May 11, 2001) (finding that § 236(c) did not violate petitioner's due process rights even though he had not conceded removability); *Kahn v. Perryman,* No. 00 C 3398, 2000 WL 1053962, at *1–2 (N.D.Ill. Jul.31, 2000) ("This court is not convinced ... that the Seventh Circuit's holding in *Parra* is so narrow as to only capture such situations where" the petitioner concedes his status as an aggravated felon and his removability.); *Sierra–Tapia v. Reno,* No. 99–CV–986 TW(RBB), 1999 WL 803898 (S.D.Cal. Sept.30, 1999) (holding that liberty interest is not fundamental because petitioner would most likely be removed from the country).

Although the Court of Appeals for the Third Circuit has not ruled on the constitutionality of a mandatory detention statute for deportable aliens, the Circuit addressed the related issue of the constitutionality of such a statute for excludable aliens.[3] *See Chi Thon Ngo v. INS,* 192 F.3d 390 (3d Cir.1999). The Court recognized that due process demands an underlying justification for the detention of aliens and emphasized the necessity of an individualized evaluation of the petitioner's detention. As the Court stated "[t]he process due even excludable aliens requires an opportunity for an evaluation of the individual's current threat to the community and risk of flight." *Id.* at 398. The Court held that the petitioner's continued detention did not violate due process so long as (1) there was a possibility of the alien's eventual departure, (2) there were adequate and reasonable provisions for the grant of parole, and (3) the detention was necessary because of flight risk or threat to the community. *Id.* at 397.

The district court in *United States ex rel. Radoncic v. Zemski,* extended the rationale of *Chi Thon Ngo* to require a bond hearing for a deportable alien held in detention while appeal of his deportation decision remained pending. 121 F.Supp.2d 814 (E.D.Pa.2000). The *Zemski* Court concluded that "there is no reason why an excludable alien would be entitled to greater protection than a deportable alien." *Id.* As the Court reasoned "[i]f an alien who is subject to a *final* removal order is constitutionally entitled to an individualized assessment of the risk of flight and danger to the community on a current basis, then *a fortiori,* an alien who is not yet subject to a final removal order must be accorded the same opportunity." *Id.* at 817.

 This Court concludes, after considering the diverse reasoning discussed in relevant case law, the parties' briefings and oral arguments, that detaining Petitioner without allowing him a forum to contest the presumption that he is dangerous or a flight risk implicates a fundamental liberty interest. Petitioner is a lawful permanent resident of this country who has not received a final order of deportation. He is entitled to the opportunity to demonstrate that clemency is warranted under § 212(c) of the Act because of his family ties in this country and his alleged rehabilitation. Petitioner's status as a lawful permanent resident does not change until he receives an administratively final order of removal or deportation. *See Matter of Ayala–Arevalo,* Interim Dec. 3371, 1998 WL 833810 (BIA Nov. 30, 1998). It follows then that Petitioner retains the constitutionally-protected liberty interests that flow from his status as a lawful permanent resident, including the substantive due process right to be free from arbitrary

---

**3.** The petitioner in *Chi Thon Ngo* was an alien whose order of removal was final but who was still detained in the United States because his native country, Vietnam, refused to accept his return. *See Chi Thon Ngo,* 192 F.3d at 392.

confinement pending the completion of deportation proceedings.

■ Having found that § 236(c) implicates a fundamental liberty interest as applied to Petitioner, the Court proceeds to apply the compelling interest test. As noted in *Martinez v. Greene:*

> In the context of immigration statutes and regulations, whether the infringement is narrowly tailored to serve a compelling governmental interest is determined by evaluating whether the infringement on liberty: (1) is impermissible punishment or permissible regulation; and (2) is excessive in relation to the regulatory goal Congress sought to achieve.

28 F.Supp.2d 1275, 1282 (D.Colo.1998); *see also United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).

The detention mandated by § 236(c) is clearly regulatory and not punitive in nature because the power to deport necessarily includes the power to detain, at least for some period of time. *See Carlson v. Landon,* 342 U.S. 524, 537, 72 S.Ct. 525, 96 L.Ed. 547 (1952) ("Deportation is not a criminal proceeding and has never been held to be punishment."). In determining whether § 236(c) is excessive, the court considers the legislative history which outlines the following four-fold government purpose: (1) to protect the public from potentially dangerous criminal aliens; (2) to prevent aliens from absconding during removal procedures; (3) to correct former bond procedures under which over twenty percent of criminal aliens absconded before their deportation hearings; and (4) to restore public faith in the immigration system. *See* S.Rep.No. 104–48, 1995 WL 170285, at 1–6, 9 (1995).

Section 236(c)'s indiscriminate denial of bond is "excessive" because the government's objectives can be satisfied by less oppressive means, such as conducting individual bond hearings. A bond hearing would undoubtedly reduce the risk of an erroneous deprivation of liberty and would nonetheless protect the public because a careful evaluation of an individual alien's case should result in the detention of those who are likely to flee. Further, the administrative costs would not be unduly burdensome given that such a hearing is already available to removable aliens not subject to mandatory detention and to aliens who have been found removable. Hence, as many courts have found, the imputation that all deportable aliens present a danger to the community or a flight risk is arbitrary and excessive. *See St. John v. McElroy,* 917 F.Supp. 243, 246 (S.D.N.Y.1996) (holding a former mandatory detention statute unconstitutional because it impermissibly "imputes a purpose to injure society to all detained aliens with aggravated felony convictions, regardless of the circumstances of the individual case.").

## II. Procedural Due Process

■ Only when a restriction on liberty survives substantive due process scrutiny does the further question of whether the restriction is implemented in a procedurally fair manner become ripe for review. *See Salerno,* 481 U.S. at 746, 107 S.Ct. 2095. Because the Court concludes that Petitioner's substantive due process rights were violated, it is unnecessary to determine whether his procedural due process rights were also compromised. Nonetheless, the court considers Petitioner's procedural due process claim in the event that it is later determined that § 236(c) withstands substantive due process scrutiny.

■ To determine whether a statute satisfies procedural due process, the court should balance the following factors: (1)

the private interest affected by the official action; (2) the risk of an erroneous deprivation of the interest; (3) the probable value of additional or substitute procedural safeguards, and (4) the government's interest including the fiscal and administrative burdens that the additional or substitute procedures would entail. *See Mathews v. Eldridge,* 424 U.S. 319, 321, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

Under this balancing test, a statute such as § 236(c) which denies even the possibility of bond can scarcely claim constitutional sanction. As a district court has written "[a]t a minimum, due process requires some form of individualized consideration for release on parole pending a final determination of excludability." *Cruz–Taveras v. McElroy,* No. 96 Civ.5068 (MBM) 1996 WL 455012 (S.D.N.Y. Aug.13, 1996). The private interest at stake, "the right to be free of indefinite and possible long-term detention pending a deportability determination," is significant. *Martinez v. Greene,* 28 F.Supp.2d 1275, 1283 (D.Colo. 1998). Further, "the risk of erroneous deprivation of liberty is substantial because § 236(c) provides no procedure at all for determining if an alien warrants release on bond." *Id.* The burden of an alternative procedure, such as individual bond hearings is slight. Bond hearings are brief, non-burdensome and already available to removable aliens not subject to mandatory detention as well as aliens who have been deemed removable. To require such hearings for lawful permanent residents who challenge their removal would not impose a substantial hardship on the INS. Further, the government would actually benefit by holding bond hearings because it may well decrease the number of detainees and mitigate the cost and shortage of space problem at detention centers.

Any additional burden on the government imposed by individual hearings would not outweigh the risk of erroneous deprivations of liberty, even if only a small percentage of aliens demonstrate that they should be released on bond. As with his substantive due process rights, the Court concludes that procedural due process rights "requires an individualized consideration of whether each alien detained pursuant to § 236(c)(1) presents a flight risk and a threat to the community's safety." *Id.*

### CONCLUSION

For the foregoing reasons, this Court grants the petition for writ of habeas corpus and orders that the INS schedule an immediate bond hearing to determine Petitioner's eligibility for release pending his removal proceedings.